## PARKS vs. COMSTOCK.

A transfer of stock, absolute and unconditional in its terms, expressing a consideration, and vesting in the assignee a complete and perfect title to the interest of the assignor in such stock, and a written memorandum of the transaction, of the same date, signed by the same parties and a third person as surety for the assignee, executed and delivered at the same interview and in response to a demand of the assignor, for a memorandum of the transaction, must be regarded as delivered at one and the same time, for the same purpose, and should be deemed different parts of the same instrument, and construed together.

And such memorandum, being a part of the assignment, and the two one instrument, a seal to each is unnecessary; one seal will suffice for both. If a separate instrument, and executed even after the assignment, it would operate as a defeasance, in equity, and, (since the Code,) at law, though not under seal.

As one instrument with the assignment, such a memorandum is sufficiently stamped by placing the proper stamp upon the assignment; as a separate instrument, a stamp may be affixed to it and canceled on the trial.

Such a memorandum is not inoperative as a defeasance because executed by the assignee together with a third party; where it contains two parts—one defining the object and the purpose of the assignment, and the other covenanting to indemnify against costs—and the third party is only a surety for the performance of the covenant of indemnity.

P. & B. being copartners, under the firm name of P. & Co. held the title to 198 shares of the stock of a corporation, in which C. & W. were also stockholders. P. desiring a dissolution and an adjustment of the firm matters, assigned to C. his interest in such stock, C. agreeing to take legal measures to effect a settlement of the partnership, and ascertain the value of P.'s interest in such stock. As a consideration for such assignment, and to continue P. as a stockholder and director of the company, C. transferred to him ten shares of other stock owned by him, with an agreement that pending the settlement with B. each should receive the dividends of the stock; and then providing for the disposition of the stock—its amount being ascertained—as follows: If it exceeded $1000 over and above the costs and expenses. of its ascertainment, the surplus to remain for future disposal. If the interest was not enough to cover $1000 and costs, the costs were to be paid, and the balance to be assigned to P., who was to reassign to C. the ten shares. If P. had no interest in the stock, then he was to reassign the said ten shares to C., and C. was to pay all costs and expenses.

Held, 1. That the fair construction of the agreement was, that if any overplus remained from the interest in the 198 shares, after defraying the costs of the litigation and reimbursing C. for the ten shares assigned to P., it was in some manner to be divided between them.

2. That the assignment was a valid transfer to C. of P.'s interest in the 198 shares of stock; and that as the defeasance showed it was transferred to en-

Parks *v.* Comstock.

able C. to ascertain the extent of that interest, and if found to be of any value, the same was to be disposed of, between them, C. had an interest in such stock.

3. That by the assignment C. became a trustee, coupled with an interest, for whatever should be adjudged to belong to P. as a member of the firm of P. & Co.; and as such, he had the legal title; and being interested, that P. could not settle and adjust the affairs of the partnership without C.'s assent.

4. That in the absence of any evidence of delay or violation of agreement by C., or showing that he was not endeavoring by proper means to ascertain the interest of P. in the 198 shares of stock, an action could not be maintained by P. against C. to compel a reassignment by the latter to the former, of the plaintiff's interest in the 198 shares of stock, on the ground that it was a trust in the hands of the defendant, for a specific purpose, which purpose had been accomplished, or if not, which purpose had been revoked; because, (1.) There was no such fraud established as would justify the setting aside of the assignment, or declaring it void. (2.) Because C. having assumed responsibility, incurred costs and performed services, had such an interest that P. could not revoke the assignment, settle the copartnership matters, and determine what interest he had as such partner, in the 198 shares of stock, without the assent of C. (3.) Because, if C. had no interest, even, and if the power of revocation did exist, actions having been commenced by and against him, in relation to the matter, P. could not revoke the assignment, without tendering an indemnity against such actions, for all costs and damages, as well as tendering a reassignment of the ten shares.

APPEAL from a judgment entered upon the report of a referee.

The plaintiff was a member of the copartnership firm of S. A. Parks & Co., the affairs of which were in an unsettled condition. The firm owned 198 shares, of $100 each, of the capital stock of the Pioneer Paper Company. On the 16th of June, 1863, the plaintiff, by an instrument in writing, under seal, expressing a consideration of $1000, transferred all his right and title to the said stock, to the defendant; the plaintiff covenanting that he was the owner, either legal or equitable, of the stock thus assigned. At the same time the defendant transferred to the plaintiff ten shares of the stock of the same company. On the same occasion the parties and one William Wilson executed, without seal, an instrument in the following words and figures:

"Memorandum of an agreement made this 17th of June, 1863, between Elisha Comstock of the first part, Solomon A. Parks of the second part, and William Wilson of the third part, witness: That whereas, Comstock, on the 16th inst. sold and assigned to Parks ten shares of the capital stock in the Pioneer Paper Company. Also, whereas, Parks and one Coe S. Buchanan being equal partners under the firm of S. A. Parks & Co., in 1859 took 198 shares of the capital stock of said company, and Parks this day has sold and assigned to Comstock, all his right, title and interest (which he claims is an equal half) to and in said 198 shares, with the understanding that Comstock is to take legal measures to effect a settlement between the parties to the said company partnership of S. A. Parks & Co., and thereby ascertain the value of said interest in said stock. Also, whereas, Comstock and Wilson have agreed to indemnify Parks against costs in a certain contingency. Now, therefore, Comstock and Parks agree, that during the pendency and until the settlement is effected with Buchanan they will each draw the dividends of said stock as if the said assignment had not been made.

Also, it is further agreed, that on the said interest or value of said stock being ascertained, in case it exceeds the sum of one thousand dollars, and costs and expenses incurred in the investigation, settlement, &c., the surplus shall remain for future disposal; and in case it is not sufficient to cover said sum, costs, &c., and still enough to pay said costs, the balance to be assigned to Parks, after costs paid, and the Comstock $1000 to be reassigned to him.

Also, it is agreed, that in case it turns out that Parks has no interest in said stocks, Parks is to reassign said $1000 to Comstock, and Comstock and Wilson are to save Parks against the payment of any part of said costs, ex-

penses, &c., which Wilson and Comstock hereby agree to in consideration of one dollar and the premises.

Witness our hands and seals the day and year first above written."

Shortly after the execution of this agreement, Buchanan having procured the stock belonging to the firm of S. A. Parks & Co. to be transferred to his individual name, Comstock commenced an action against him and the Pioneer Paper Company, for the purpose of having such transfer declared fraudulent and void, and scrip issued to Buchanan canceled, and new scrip therefor issued to Comstock and Buchanan jointly; in which action Comstock succeeded, and the prayer of his complaint was granted. Comstock did not commence any action for the settlement of the affairs of S. A. Parks & Co., but on the 7th of November, 1863, an action for that purpose was commenced by Buchanan against both Comstock and Parks, which action is still pending and undetermined.

It was alleged in the complaint in this action, and not denied by the answer, that the defendant intended to hold and appropriate the stock to his own use, and that he threatened and intended to draw the dividends thereon and to have scrip therefor issued in his own name.

The complaint also contained allegations of fraud and mistake in the execution of the agreement, and stated that the same was not stamped as required by the revenue act, but that the assignment executed by the plaintiff had affixed thereto a twenty-five cent stamp. It also contained an offer to pay the defendant all costs and expenses to which he was entitled under the contract. And for relief the plaintiff asked that the assignment of the 198 shares of stock be declared fraudulent and void, and that the same might be canceled, and that the defendant be adjudged to reassign the same; and that an account be taken of the costs and expenses chargeable to the plain-

tiff under the contract; and the complaint concluded with a prayer for general relief.

The action was tried before a referee.

No evidence was given, on the trial, in support of the allegations of fraud or mistake.   The agreement was produced and stamped in the presence of the referee, according to the provisions of the revenue act of the 30th of June, 1864.   The plaintiff produced in court, and tendered to the defendant a reassignment in due form and duly executed, of the ten shares of stock assigned by the defendant to him, which reassignment was not accepted or received by the defendant.

Upon the facts so proved, and upon the uncontroverted allegations of the complaint, the plaintiff rested the case, and the same was submitted to the referee, who held and decided as matter of law, that the pleadings and proof did not entitle the plaintiff to any relief whatever, and that the complaint must be dismissed.

Judgment of dismissal was accordingly entered, and the plaintiff appealed.

*A. C. Paige* and *D. L. Seymour,* for the appellant.

I. Any mistake in regard to the want of revenue stamp on the second paper, was properly remedied on the trial, under the last act of congress, by affixing the stamp and cancelling it in the presence of the court.   The instrument was executed before the passage of the act of congress of June 30, 1864, in relation to revenue, and section 163 of that act provides for affixing a stamp, as was done in this case, upon any instrument to which the stamp is wanting.   But it required no stamp.   The two papers are to be regarded as one instrument—one contract—and it is not necessary that a stamp should be placed upon each piece of paper on which the contract is written, but only that there should be affixed to the contract stamps to the amount of five cents for each piece of paper.   A sufficient

stamp for both parts of the contract was placed upon the first piece of paper executed.

II. The two pieces of paper, " A" and " No. 1," are to be taken together as constituting one agreement. They were executed contemporaneously, refer to each other, each is limited by the other, and both are parts of one agreement. The allegations in the complaint show both papers to be but one instrument. The exceptions taken to the refusals of the referee to find, as requested, that these instruments " must be construed together as one instrument," and that " No. 1 is to be construed as a part of the whole contract, notwithstanding the seals are omitted " are, therefore, well taken. (*Hanford* v. *Rogers*, 11 *Barb.* 18. *Cornell* v. *Todd*, 2 *Denio*, 130 ; *see opinion of Bronson, J., and cases cited.*) In the case, 11 *Barb.* 18, one paper was sealed and the other was not.

From the two parts of this *one contract*, it appears to be a transfer to Comstock of the interest of Parks in the 198 shares of the stock of the said.paper company, with a condition or stipulation requiring that stock to be reconveyed by Comstock to Parks as soon as a settlement of the copartnership affairs of S. A. Parks & Co. should be " effected with Buchanan." Upon ascertaining the interest or value of the stock of Parks so transferred, in case it exceeded $1000 and costs, and expenses of investigation, &c., the surplus was to be re-transferred to Parks ; but if its value should not be sufficient to cover the $1000 costs, &c., and yet enough to pay the costs, then the balance was to be reassigned to Parks after he should have paid the costs, and then also the ten shares assigned by Comstock to Parks were to be reassigned to Comstock. If it should turn out, however, that Parks had no interest in the stock, then Parks was to reassign the said ten shares to Comstock, who was in that event to indemnify him against costs.

IV. Such instrument, whatever it may be called, operated not to transfer the property absolutely, but merely

to place in the hands of Comstock the formal title to the unascertained and undefined interest of Parks in the 198 shares; and on that interest being ascertained, it was (subject to certain deductions specified in the instrument itself) to be reassigned to Parks. In all cases where the owner of property does not part with its possession absolutely, but conveys it conditionally, or in trust for certain purposes, or to an agent for specific uses, or by way of mortgage, or to be held as security against some loss, a court of equity will take cognizance of the matter, and will enforce the rights of the parties according to their equities, under their agreement, and will protect either party against injustice from the other. A deed conveying lands with a condition that such conveyance shall be void if the grantor pays certain legacies charged on other lands, is in the nature of a mortgage; and the remedies upon it are in equity. (*Stewart* v. *Hutchins*, 13 *Wend.* 485.) So an absolute bill of sale of personal property may be shown either by a separate writing or by parol to be subject to a defeasance, and equity will enforce the rights of the parties accordingly. (1 *Pars. on Cont.* 452, *n. xx. Read* v. *Jewett*, 5 *Greenl.* 96, *and. cases cited in said note in Parsons.*) In all cases of the mortgage of personal property the mortgagor has an equity of redemption. (*Mattison* v. *Baucus,* 1 *N. Y.* 297. *Hill* v. *Bebee*, 13 *id.* 565. *Smith* v. *Quartz Co.*, 14 *Cal.* 242, *cited* 21 *U. S. Dig.* 289, § 284.) In all cases of trusts, where the purposes of the trusts have been answered, if any part of the property remains undisposed of, it reverts to its lawful owner. In all cases of property placed as security or indemnity against loss, when the occasion has passed, or the indemnitee has been paid or tendered his losses, costs and expenses, the right to the possession of the property held as security results to the owner. In cases of agency, where the agency is not coupled with an interest, the principal may at any time revoke the agency and resume the pos-

Parks *v.* Comstock.

session of any property in his hands. And in case of an agency coupled with an interest, the principal may, under the direction of the court, ascertain the extent of that interest and relieve his property from the control of the agent. An equity of redemption is like a trust estate. (*Willard on Real Estate*, 143.) A mortgage is a mere security for the debt. (*Id.* 116.) An instrument once a mortgage is always a mortgage, and the mortgagor has always his right of redemption. (*Clark* v. *Henry*, 2 *Cowen*, 324.)

V. Whether Comstock held the interest of Parks in the 198 shares as mortgagee, trustee, agent, or in any other character, the contract shows that he held it only to indemnify him against the costs and expenses he might incur in any legal proceedings to ascertain the quantum of Parks' interest in these shares.

VI. Upon another ground, independent of the construction of this agreement as to the contingency upon the happening of which the plaintiff's interest in the stock was to be reassigned, the plaintiff insists that he is entitled to a reassignment of the stock upon an accounting, and the payment to the defendant of his costs, expenses, &c., and a reassignment to him of his ten shares.

The contract between the parties made the defendant the mere agent of the plaintiff to effect a settlement with Buchanan, and thereby ascertain the plaintiff's interest in the stock. He was constituted such agent, and took upon him the agency the 17th of June, 1863. The contract gave him no interest in the stock, except the nominal ownership, for the purpose of performing his duties under the contract. He was not even provided with a compensation for his services in the duty which he assumed. He was only to be paid his "costs and expenses incurred in the investigation, settlement," &c. The referee is mistaken in supposing that Comstock transferred his $1000 of stock in consideration of Parks transferring his interest in the

198 shares. The contract shows that the ten shares were transferred by Comstock to Parks in consideration of $1000, which he acknowledges has been paid to him, and paper No. 1 provides that in a certain contingency the Comstock $1000 shall be reassigned. Thus it appears that "the Comstock $1000," if not already paid for, as certified by the agreement, is to be reassigned to him, or he is to be paid for it, and in no event can he be the loser. Comstock, in violation of his duty, commenced no action against Buchanan to effect a settlement, &c., previous to the commencement of this suit on the 21st day of July, 1864, more than a year after taking upon himself the duty of agent for that purpose. On the other hand, in defiance of the contract and his duties under it, Comstock claimed to be the absolute owner of the whole of Parks' interest in this stock, not subject to any right of Parks whatever. This is alleged in the complaint, and not denied, but actually claimed in the answer. The plaintiff having ascertained this intention of the defendant, and having waited a reasonable time, to wit, eight months, for him to proceed with the discharge of his duty under the contract, rescinded the contract, offering, at the same time, to return the ten shares of stock which he had received from Comstock, pay all his costs and expenses, and to do any other act to place him, Comstock, where he was when the contract was made. In this the plaintiff was right, as Comstock stood in no other relation to him than a clerk, laborer, or any agent whatever, who, if not performing his duty can be discharged, and is thereupon bound to re-deliver to the principal the property placed in his hands for the discharge of his duties.

VII. It is inequitable and unreasonable to require the plaintiff to permit this property still to remain in the hands of Comstock, because Comstock commenced a suit against Buchanan and the paper company, on the 6th day of July, 1863, for the purpose of compelling Buchanan to

re-transfer to him, Comstock, and Buchanan the said stock which Buchanan had caused to be entered in his individual name on the books of the company, and for no other purpose. Nor because Buchanan himself, more than five months after the contract was made between himself and the plaintiff, commenced a suit for an accounting and settlement of the firm matters of S. A. Parks & Co. The whole object in putting the stock in his hands was that he, as an actor, should procure a settlement of the affairs of S. A. Parks & Co., and not leave it to others to do.

VIII. The plaintiff is not concluded or barred of any right of property or action by the judgment in the case of Comstock against the paper company and Buchanan, commenced the 6th of July, 1863, in which the judgment was entered in March, 1864, as the plaintiff was not a party to that action. Nor by anything that has since transpired in the suit commenced on the 27th of November, 1863, by Buchanan against Comstock and Parks, which is not yet tried; and in which Parks has put in no answer, and which cannot settle the questions litigated in this suit between Parks and Comstock.

*A. Pond,* for the respondent.

I. The case, as made by the complaint, is one for fraud, and it is an entire failure of proof to endeavor to sustain it, on an affirmance of the agreement which the action was brought to set aside and to rescind, for the fraud alleged. The causes of action are inconsistent. (*Code,* § 171. *Walter* v. *Bennett,* 16 *N. Y.* 250. *Ransom* v. *Wetmore,* 39 *Barb.* 104. *Mayor* v. *Parker Vein Co.,* 21 *How.* 289. *Lloyd* v. *Brewster,* 4 *Paige,* 537. *Cox* v. *Platt,* 32 *Barb.* 126, 130. *Williams* v. *Ayrault,* 31 *id.* 364, 367. *Bradley* v. *Aldrich,* 40 *N. Y.* 504. *Coleman* v. *Second Av. R. R.,* 38 *id.* 202. *Towle* v. *Jones,* 19 *Abb.* 455. *Bush* v. *Tilley,* 49 *Barb.* 599.)

II. But if there was not an entire departure from the

complaint, the plaintiff cannot recover. 1. The plaintiff, in court, fully ratified the contract, if it was capable of ratification, and therefore he is estopped now to ask to have it rescinded. This action to rescind it was brought in July, 1864, and the agreement was attempted to be ratified on the 2d of February, 1865. If, therefore, it was competent to ratify it, still it could not be ratified so as to give the plaintiff a cause of action thereon, previous to the ratification. This the law of congress does not assume to do, and the law is, it cannot be done. (*Gorham* v. *Gale*, 7 *Cowen*, 739. *Wattson* v. *Thibon*, 17 *Abb*. 184.) 2. But the supposed unsealed defeasance was void and inoperative to do away with the absolute assignment under seal. (*a*.) It was not stamped, and was therefore void. · (*See decision in Comstock* v. *Buchanan*, 57 *Barb*. 582.) (*b*.) Being void, the law settled the rights of the parties to that contract at the time, and vested an absolute title in an undivided half of the stock in the defendant, and no law of congress which assumes to take away such vested right is valid. The plaintiff's attorney concedes that congress has no power to pass a law impairing a vested right created by a contract, and if that is so, (and it must be so,) the law is void and inoperative, so far as this assignment is concerned. (*c*.) But the defeasance was unsealed, and hence was inoperative to qualify the absolute nature of the sealed transfer. This was expressly decided in reference to this very paper, in the case of Comstock against Buchanan, which should be followed here. (*Bronson* · v. *Fitzhugh*, 1 *Hill*, 185. *Howard* v. *Cooper*, *Id*. 44. · *Nelson* v. *Sharp*, 4 *id*. 584. *Durgin* v. *Ireland*, 14 *N. Y.* 322. *French* v. *New*, 28 *id*. 147.) The plaintiff's counsel is incorrect in saying that no case could be found holding as above, where the defeasance was executed at the same time. (*See Fitzhugh* v. *Bronson, supra*.) He is also mistaken in supposing that this paper, called a defeasance, was executed at the same time with the other. On the contrary, it was exe-

cuted afterwards, and recites the prior absolute sale and transfer of the stock as a completed transaction. (*Mann* v. *Witbeck*, 17 *Barb.* 388.) Besides, it was a subsequent, separate and distinct contract from the sealed transfer, and cannot be construed in connection with the sealed assignment of the stock from Parks to Comstock, for the reason that Wilson was a party to the last agreement, and was not a party to the former. In order to come within the principle contended for by the plaintiff's counsel, the two writings must be between the same parties, and no other. Because, to be but one contract, they must be such papers as they would be if signed by the whole, and are obligatory upon each; but Wilson was no party to the prior assignment, either of Parks or Comstock, and hence cannot, by construction, be made a party to them. (*Craig* v. *Wells*, 1 *Kern.* 315.) Now, to avoid this position, the plaintiff's counsel cites *Hanford* v. *Rogers*, (11 *Barb.* 18.) But that case was not a case of a defeasance at all. It was a case where the defendant had transferred a chose in action—a bond—and indorsed a guaranty thereon, without expressing any consideration in the guaranty, and the court held that, being executed at the same time with an assignment under seal, it was supported by the consideration of the assignment. That is all. And in order to effect this the court adopted the principle alluded to, that two papers being executed at the same time, in relation to the same subject matter, should be construed together, and thus make but one entire agreement. But this case and the doctrine enunciated in it, so far as this question is concerned, was exploded long since. (*Brewster* v. *Silence*, 4 *Seld.* 207. *De Ridder* v. *Schermerhorn*, 10 *Barb.* 638. *Allen* v. *Fosgate*, 11 *How.* 218.) These authorities hold that the two instruments make two contracts upon which the remedies are distinct and independent; and this accords with the case of *Bronson* v. *Fitzhugh*, (1 *Hill*, 185,) where Bronson, J., said that the remedy of the party for

the breach of the collateral agreement was by action upon it. It will be seen, therefore, that the whole foundation on which it is sought to rest this case fails. (*d.*) But suppose the paper No. 1 was valid, what then? There has been no violation of it by the defendant. He brought a suit at once to set aside the fraudulent transfer of the stock by Buchanan to himself, owned by S. A. Parks & Co., for the purpose of clearing away the fraudulent obstructions in the way of an action to settle the accounts. He recovered in that action, and Buchanan appealed to the general term, where the judgment was affirmed, and then Buchanan appealed to the Court of Appeals, where the action is still pending. Soon after the commencement of this action by Comstock, and before the trial, Bullard commenced an action to settle the partnership matters of S. A. Parks & Co., and made both Parks and Comstock defendants, and that action is now pending, and indeed being tried. It is being defended by Comstock. No intimation but that it is being defended in good faith, and with a bona fide intention on Comstock's part to make the surplus as large as possible. Then why should the court interfere to stop him from carrying out his agreement? I insist there is no precedent for such an action.

III. But no ground is shown for the interference of equity to set aside the assignment of the stock by the plaintiff to the defendant, even if the paper No. 1 is held valid. 1. Equity will interfere to compel a reassignment of, or cancellation of the transfer of an instrument, only when the same was obtained by fraud, or some damage is to be apprehended by omitting to interfere; but no such ground is put forth here, nor does any exist. (*Willard's Eq. Jur.* 302–304. *Field* v. *Holbrook,* 6 *Duer,* 597. *Cox* v. *Clift,* 2 *Comst.* 118. *Scott* v. *Onderdonk,* 14 *N. Y.* 9. *Ward* v. *Dewey,* 16 *id.* 519.) And see *Hotchkiss* v. *Elting,* (36 *Barb.* 38.) 2. Suppose the paper No. 1 was valid, what then? The plaintiff executed it, and ratified it in open court.

Parks *v.* Comstock.

Then he is bound by it. It provides for a reassignment of this stock, in a " certain contingency," which has not yet arisen. Can he, in the face of his contract, get the stock he sold to the defendant back by a suit in equity, sooner than by the terms of the contract the defendant agreed to reassign it to him? The defendant also assigned stock to him. Could the defendant repudiate after getting half through with the litigation, and demand his stock back again from the plaintiff, if the latter refused? Certainly not; and this shows the case is not one of agency at all, but of purchase and sale. The defendant bought the interest of the plaintiff in the S. A. Parks & Co. stock, and the plaintiff purchased of the defendant $1000 stock, and made a subsequent agreement to trade back at a certain time, not yet arrived, on the happening of a contingency, not yet existing. That is all. Why should any third person, or the court, be called in to set this agreement aside, while the defendant is performing his part of it, is responsible, and no fraud, accident or mistake pretended? It is a most extraordinary case for able counsel to present. A bill brought to set aside a contract of sale, where the defendant is entirely responsible, and no fraud, accident or mistake is charged. Under such circumstances the law is, that both parties are bound by the contract, and if the defendant should violate it, let the plaintiff sue on the agreement for a breach, or bring a bill for a specific performance. Those are the remedies open for an ordinary man upon a contract which the plaintiff himself ratifies and claims is valid. Should he have more remedies than an ordinary man, upon a valid contract? I insist not, and if not, his complaint was properly dismissed.

IV. But it is said the defendant was made but an agent of the plaintiff, by the agreement, and hence that the plaintiff could revoke the agency at any time. This is not so. 1. The defendant is no agent at all. This was decided expressly in the Comstock suit. The question is

the same in this suit as it was in the former, and it would be entirely incongruous to have the same question decided differently in the two suits. 2. But if a party makes out a power of attorney, and revokes it, who ever heard that a bill in equity is proper to set aside a power of attorney in such a case, even though the attorney insists on acting under it. There is no precedent for it. 3. But if it is an agency, it is one coupled with an interest, and it is therefore irrevocable. It is for Comstock's interest to control the stock in the corporation, of which he is a member, or to neutralize Buchanan's influence there, and he is entitled to have that control as long as the agreement permits it. He transferred to get the right to $1000 of stock, which, in a certain event, was never to come back to him again. Having possessed himself of that right for a valuable consideration, he is not to be deprived of it simply because the plaintiff elects to repudiate or rescind the agreement. Much less will a court of equity decree that he shall give it up without cause. No; the agency in such a case is irrevocable, as it is coupled with an interest, and was given upon a valuable consideration. *Story* says, in regard to this: "If, however, there be an express stipulation by the principal that the authority shall be irrevocable; or, if the authority be given for a valuable consideration, or be coupled with an interest, or be part of a security, the authority will be irrevocable, unless there be an express stipulation that it shall be revocable." (*Story on Cont.* § 192. 1 *Pars. on Cont.* 58. *Hutchins* v. *Hebbard*, 34 *N. Y.* 24.) Now, here, the contract of Parks was made upon a good and valuable consideration, the defendant has an interest in its performance, and in a certain event is not to reassign the stock to Parks, nor is Parks to reassign to the defendant the stock assigned to him by Comstock. Is all this to be revoked by Parks electing to repudiate the agreement? More than this. Can Parks repudiate after Comstock has got one lawsuit

Parks *v.* Comstock.

pending in the Court of Appeals, and a second in the Supreme Court, growing out of his agency, if agency it is, on an offer simply to pay his costs in one suit up to a certain time?

V. But as already intimated, if Parks could repudiate or revoke Comstock's agency, he could only do so by indemnifying him against the suits in the courts, growing out of this transfer, and in pursuance thereof. His bill is defective in not making such offer, and his case is also alike defective in not offering such indemnity. But, in truth, it is not a revocable agency at all. It is a mere purchase and sale between the parties, and not an agency, and therefore the plaintiff has no right to rescind the agreement at all. But if he has that right, he should assert it before commencing the action; an offer in the bill is not sufficient. (*Bruce* v. *Tilson*, 25 *N. Y.* 197.)

VI. Is there any need of the interference of equity here? None at all. It is said by one of the counsel that here is $20,000 worth of property. This is an entire mistake. The fact is, Buchanan claims Parks don't own any interest in the stock, and Comstock, by the agreement, is bound to ascertain how that stands. But in any event the interest is not large. But whatever it is, is there any danger in letting Comstock go on, as the contract provides; and when the value of Parks' interest is ascertained, let Parks sue for it, if Comstock then withholds it from him. He is bound to wait till that time, by virtue of his agreement, and the court is not authorized to change, modify or cancel the agreement which the parties made.

VII. The report of the referee does not present any question for review in this court. 1. The referee has not stated what facts he found, so that the court can say whether his conclusion of law was correct or not. He has simply directed judgment for the defendant, without stating any other ground than that the evidence does not warrant any other judgment. This court cannot review

such a finding. (*Bridger* v. *Weeks*, 30 *N. Y.* 328. *Penn. Coal Co.* v. *Canal Co.*, 31 *id.* 91, 101.) 2. Nor will this court review the decision of the referee refusing to find other facts than those found by him and stated in his report. (*Bissell* v. *Pearce*, 28 *N. Y.* 258. *Terry* v. *Wheeler*, 25 *id.* 524. *Casler* v. *Shipman*, 35 *id.* 542. *Priest* v. *Price*, 3 *Keyes*, 222. *Mosher* v. *Hotchkiss*, *Id.* 161. *Cady* v. *Allen*, 18 *id.* 574. *Brooks* v. *Van Every*, 3 *Keyes*, 27. *Lewis* v. *Ingersoll*, 1 *id.* 347.)

*By the Court*, JAMES, J. As this cause was tried before a referee, this court on appeal from the judgment may review the findings of fact as well as the conclusions of law. The action is prosecuted for the purpose of compelling a reassignment by the defendant to the plaintiff of the interest which the plaintiff as a member of the firm of S. A. Parks & Co., had on the 17th day of June, 1863, in 198 shares of the Pioneer Paper Company, and that day assigned to the defendant, on the ground that it was a trust in the hands of the defendant for a specific purpose, which purpose has been accomplished, or if not, which trust has been revoked.

The defendant denies the trust, and avers that the assignment was absolute and unconditional, for a valuable consideration.

The instrument of transfer set forth by the plaintiff and admitted by the defendant, expresses a consideration, and is in terms absolute and unconditional, vesting in the defendant a complete and perfect title to the interest of Parks, as a member of Parks & Co., to the 198 shares of the paper company stock. To overcome this absolute conveyance, the defendant offered in evidence a written memorandum, of the same date as the assignment, signed by the parties, and one Wilson as a surety for the defendant, without stamp or seal, claiming that the two instru-

ments should be construed together as one instrument; in which case the latter would operate as a defeasance.

The reception of this written memorandum in evidence and its consideration in the case was strongly resisted, upon several grounds: 1st. Because it was not stamped. 2d. Because not under seal. 3d. Because uncertain and ambiguous. 4th. Because made subsequent to the agreement; and 5th. Because made in connection with a third party.

I hold that the two instruments must be regarded as delivered at one and the same time, for the same purpose, and should be held as different parts of the same instrument and construed together. They relate to the same transaction; the latter reciting, the former defining and declaring its object and purpose; they bear the same date; were executed and delivered at the same interview, the latter in response to a demand of one party for a memorandum of this transaction.

The objections to the admissibility of the memorandum in evidence, or its effect if admitted, are not well taken, and serve no purpose unless it be to give color to the allegation of fraud in the complaint. If the memorandum was a part of the assignment, and the two, one instrument, a seal to each was not necessary; one seal would answer for both. But if a separate instrument, and executed even after the assignment, it would operate as a defeasance in equity, and since the Code, at law, though not under seal. (*Slee* v. *Manhattan Company*, 1 *Paige*, 48. *Despard* v. *Walbridge*, 15 *N. Y.* 374–378.) As one instrument, it was sufficiently stamped; as a separate instrument, a stamp was properly affixed and canceled on the trial. (*Int. Rev. Act* 1864, § 163.)

Neither was the memorandum inoperative as a defeasance because executed with a third party; because it contained two parts, one defining the object and purpose of the assignment, the other covenanting to indemnify against

costs, and Wilson was only a surety for the performance of the covenant of indemnity.

It must be conceded that the memorandum is indefinite and uncertain in some particulars; but the intent that it should operate as a defeasance of the absolute terms of the assignment is too clearly expressed to admit of any doubt.

Construing the two instruments together, it shows the condition, purpose and intent of the parties and the effect of the transaction to be this: Parks and Buchanan were copartners under the firm name of S. A. Parks & Co. Such firm held, subject to liens, the title to 198 shares of the stock of a corporation known as the Pioneer Paper Company, in which Comstock and Wilson were also stockholders; some difficulty had arisen between Parks and Buchanan, whereby Parks desired a dissolution and an adjustment of the firm matters; he had a consultation with Comstock, and to accomplish such desire assigned to Comstock his interest in the stock of said company, with an agreement that Comstock should take legal measures to effect a settlement of the said partnership and ascertain the value of Parks' interest in said stock. As a formal consideration for such assignment, and to continue Parks as stockholder and director of said company, Comstock transferred to Parks ten shares of other stock owned by him, with the agreement that pending the settlement with Buchanan, each should draw the dividends of said stock as though no assignment had been made; and then providing for the disposition of the stock, its amount being ascertained, as follows: If it exceeded $1000 over and above the costs and expenses of its ascertainment, the surplus to remain for future disposal. If the interest was not enough to cover $1000 and costs, but still enough to pay costs, the said costs to be paid, and the balance to be assigned to Parks, he to reassign to Comstock the said ten shares. If Parks had no interest in said stock, then

he was to reassign the said ten shares of stock to Comstock, and Comstock to pay all costs and expenses. In part, this agreement is very clear, and in part uncertain. It is clear that litigation and expense was contemplated as necessary to obtain an adjustment or determination of Parks' interest in the 198 shares of said stock; that if nothing was realized, the entire cost and expense of such litigation should be borne by Comstock; if anything was realized and enough to pay such cost and expense, it should first be appropriated for that purpose; if any amount over such costs were realized, that after paying such costs, it should be appropriated to Comstock to the extent of $1000, to reimburse him for the ten shares of stock assigned to Parks; that the overplus, if any, after paying such costs and reimbursing the $1000, was to remain for future disposal.

So far there seems no difficulty; but it is exceedingly difficult, satisfactorily to determine what is to be done with that surplus set apart for future disposal. It must be determined from the two instruments and from such other facts connected with the transaction as were proved on the trial. Parks claimed an equal undivided interest in 198 shares of stock valued at about $10,000. Comstock without any interest takes an assignment of that interest to litigate it, at his own cost and expense, if unsuccessful. It is highly improbable that Parks intended to give away all his interest in the 198 shares claimed to be worth $10,000, thus confirming the theory of a defeasance; and the instrument of defeasance canceled, it seems improbable that Comstock would have undertaken such a prosecution at its own risk, unless that obligation was coupled with an interest, if successful. Therefore, the fair construction of the defeasance is, that if any overplus remained from the interest in the 198 shares after defraying the litigation and reimbursing Comstock for the ten shares of stock assigned to Parks, it was in some manner to be

divided between them, but in what proportion is uncertain, and perhaps not necessary to a determination of this suit.

The assignment was a valid transfer to Comstock of Parks' interest in the 198 shares of stock; the defeasance showed it was transferred to enable Comstock to ascertain the extent of that interest, and when ascertained, if of any value, to be disposed of between them. Therefore Comstock had an interest in said stock. By the assignment he became a trustee, coupled with an interest, for whatever should be adjudged as belonging to Parks as a member of the firm of S. A. Parks & Co. As such he had the legal title, and being interested, Parks could not settle and adjust the affairs of the partnership without Comstock's assent. Besides, Comstock as the legal owner had a right to manage the claim; it was so contemplated. He did commence an action, and a very proper one, too, in my judgment, to remove obstructions in the way of an action to ascertain the interests of the several members of the firm, and that action is still pending and undetermined. Before this an action was commenced against Comstock, by Buchanan, to settle the partnership matters of S. A. Parks & Co., which action is still pending and undetermined; and in that action, by an affirmative defense, all the equities between the members of the firm of S. A. Parks & Co. can be adjusted so as to determine the interest of each in the said 198 shares of stock. There is therefore no evidence of any delay or violation of agreement by the defendant. For aught that appears, he is endeavoring by proper means to ascertain the interest of Parks in the 198 shares of stock; and until a determination is had, or an amicable settlement or adjustment made by those interested therein, and authorized to act, the extent of that interest cannot be known, the rights of the parties determined or the equities between them adjusted.

Parks *v.* Comstock.

Therefore this suit cannot be maintained.

1st. Because there is no such fraud established as would justify setting aside the assignment, or declaring it void.

2d. Because the defendant having assumed responsibility, incurred costs and performed services, has such an interest that the plaintiff cannot revoke the assignment, settle the copartnership matters, and determine the interest he had as such partner in the 198 shares of stock, without the assent of the defendant.

3d. Because if the defendant had no interest even, and if the power of revocation did exist, actions having been commenced by and against Comstock in relation to the matter, the plaintiff could not revoke the assignment, without, in addition to the offers made, tendering an indemnity against such actions, for all costs and damages.

The complaint was, therefore, properly dismissed, and the judgment should be affirmed.

Such judgment will not prevent another action for the same matter, if a different case can be presented and made out by proof.(*a*)

[St. Lawrence General Term, October 3, 1865. *Bockes, James* and *Rosekrans,* Justices.]

(*a*) The above decision was subsequently affirmed by the Court of Appeals, when the following opinion was delivered by Gray, commissioner.

Gray, Commissioner. The obvious theory upon which the plaintiff commenced and prosecuted this action was that the agreement of the 17th of June, 1863, signed by himself, the defendant and Wilson, was, as to the plaintiff, fraudulent and void upon the alleged ground that it was imposed upon him by the fraud of the defendant in procuring it to be so written as not to express the actual agreement as made between them. The statement made by the plaintiff on the 19th of February, 1864, that the agreement, as written, did not express their agreement as it was in fact made, and for the purpose of rescinding it, offering to pay the costs of the suit brought by the defendant against Buchanan up to that time, and reassign the ten shares of stock assigned to him by the defendant, was not an act in affirmance of the contract, but an effort to rescind it by compromise; but when he rested his case after simply introducing the written contracts and this offer, without an effort to establish the alleged fraud, the referee should have dismissed his complaint; assuming

that the plaintiff's offer to pay the costs of that suit up to the time of his offer, was in affirmance of the contract as written. The offer, if it was worthy of any consideration, was manifestly insufficient. Besides that suit, there was another commenced by Buchanan against both the plaintiff and defendant, in November, 1863, involving the title to the assigned stock, in which the defendant interposed an answer, and the issue made by it stood then referred. If offering to pay costs could be of any worth, the defendant's costs in the latter suit should have been provided for. Nor was the concession made at the close of the evidence, that the interest of the plaintiff in the partnership of Buchanan and himself was sufficient to cover the costs and expenses incurred in the investigation, including the costs up to the time this action was brought, of any value to the plaintiff. Property sufficient to pay costs was not in any aspect of the case what the defendant was entitled to. He was not bound to concede anything to the plaintiff until not only the ten shares of stock was reassigned, but until "after costs paid." The plaintiff's offer to prove that he had, prior to the suit of the defendant against Buchanan, settled with Buchanan their partnership affairs, was quite immaterial. The settlement, if it could be made without the sanction of the defendant, would still leave him exposed to the costs arising out of the suit brought by Buchanan against him and the plaintiff. The judgment should be affirmed.

Judgment affirmed.