HOBOKEN CITY BANK *vs.* ASHER G. PHELPS AND OTHERS.

A joint stock company asked for loans at a bank, which the latter agreed to give
upon a sufficient guaranty.  The directors prepared a bond for the purpose, to
be signed by all the directors, and containing the names of all in the body of the
instrument as obligors. , *W*, one of the directors, called on *P* and *E* to sign it,
which they did upon the condition that it should not be delivered till it was
signed by all.  It was afterwards signed by all the directors but *B*, who refused,
and his name was stricken out from the body of the instrument, and in this form
it was delivered by *W* to the bank.  *P* and *E* knew that the bank had received
it and was discounting paper on the credit of it, but did not know that *B* had
not signed it till after the failure of the company.  Held that the bond had never
been delivered, and was not binding on *P* and *E*.

A co-obligor may hold a bond as an escrow.

DEBT upon a bond given by the defendants to guarantee
the payment of notes made or endorsed by the North Middle-
sex Quarry Company and discounted for the company by the
plaintiffs.  The case was brought to the superior court in
Middlesex county, and referred to an auditor, by whom the
following facts were reported.

The bond, which was signed by all the defendants, was as
follows—except that the name of Elisha Bloomer, which is
contained in the body of it as one of the obligors, had been
stricken out, by a pen drawn across it, when it was received
by the plaintiffs.

"Know all men by these presents, that we, Bulkeley Ed-
wards, Asher G. Phelps, C. E. Cosgrove, R. H. Wilbur, of
Cromwell, and Samuel P. Westervelt, Roswell S. Pierce,
Samuel E. Frink, Elisha Bloomer of New York, are held and
firmly bound unto the Hoboken City Bank, of Hoboken, New
Jersey, in the sum of eight thousand dollars, to be paid to the
said bank, its successors or assigns ; to which payment well
and truly to be made, we and each of us bind ourselves, our
heirs, executors and administrators, jointly and severally,
firmly by these presents ; sealed with our seals and dated this
26th day of April, 1859.  Whereas the undersigned, the
above obligors, are the members of and compose the North
Middlesex Quarry Company of Cromwell, Connecticut, which

said company propose to keep an account with said bank, and to offer the promissory notes, bills of exchange and other serities of said company, either made or indorsed by them, to said bank for discount for the benefit of said company, to an amount not exceeding the sum above mentioned ; and said bank being unwilling to discount any of said notes or other securities except upon the individual responsibility of the undersigned, whether the undersigned or either of us be members of said company at the time of the discounts or maturity of any such notes or other securities or not, and we being willing to secure said bank against any loss hereafter to arise in consequence of any such discount :—Now therefore, the condition of this obligation is, that if the undersigned and each of us, our and each of our heirs, executors and administrators, shall well and truly indemnify and save harmless the said bank and its successors and assigns from any and all loss or damage on account of any such discount in any manner to arise, and if the undersigned or any of them or any of their legal representatives aforesaid shall well and truly pay the amount of any such promissory note, bill of exchange or any other acknowledgment of indebtedness discounted or advanced upon by said bank for said company, to the said bank, its successors or assigns, at maturity, to the full amount of the claim of said bank thereon, in case such amount be not paid said bank, its successors or assigns when due, then this obligation to be void, else to remain in full force and effect.

BULKELEY EDWARDS, L. S.
C. E. COSGROVE, L. S.
ASHER G. PHELPS, L. S.
S. P. WESTERVELT, L. S.
R. H. WILBUR, L. S.
R. G. PIERCE, L. S.
SAM'L E. FRINK, L. S.
L. S."

A short time before the day of the date of the bond, the North Middlesex Quarry Company, by their agent, Reuben H. Wilbur, who was also a director of the company, and Samuel P. Westervelt, also a director, applied to the Hoboken

City Bank for a line of discounts and credits, which the bank refused. They then proposed as security for whatever credit might be given to the quarry company, that a bond of guaranty signed by responsible parties, who were interested in the quarry company, should be lodged with the bank. The bank assented to this proposition, and caused its counsel to prepare the bond in suit, leaving the names of the obligors in blank, and handed it to Wilbur. The directors arranged between themselves that the bond should be signed by all the persons composing the board of directors, (although no vote was passed to that effect,) and their names were inserted in the bond by · Wilbur. He then presented the instrument to Edwards and Phelps for their. signatures, who objected to signing it, when he told them that the bond would not be good unless signed by all the parties. They then signed it, upon the express condition and understanding between themselves and Wilbur that it was not to be delivered to the bank or in any other manner · used as a valid instrument or as their bond until it had been signed by all the directors ; and Wilbur was not at any time authorized to deliver the bond as the bond of Edwards and Phelps except upon that condition. They then delivered it to Wilbur, who received it for the purpose of procuring the signatures of the other parties and delivering it to the bank when completed. Elisha Bloomer, one of the directors, and whose name had been inserted in the body of the bond as one of the obligors, when applied to by Wilbur refused to sign it. All the other parties having signed it, Bloomer's name was stricken out by drawing a pen across it, and in that condition it was delivered to the bank by Wilbur. The bank thereupon opened an account with the quarry company and discounted paper for them, chiefly upon the credit and responsibility of the parties signing the bond. The fact that Edwards and Phelps' signatures to the bond were conditional was unknown to the bank until after all the paper in question in the present suit had been discounted and the company had become insolvent, unless the erasure of Bloomer's name, which was noticed by the president of the bank, was sufficient to charge them with notice. Edwards

and Phelps knew that the bond was delivered to the bank, and that the bank was discounting paper for the company upon the credit of it, but they supposed it had been signed by all the directors, and were not informed to the contrary until after the failure of the company. After the bond had been delivered to the bank, on the 9th day of May, 1859, there was a meeting of the directors of the quarry company, at which most of the directors, including Edwards, Phelps and Bloomer, were present. They had regular quarterly meetings, and special meetings occasionally. It did not appear that Edwards and Phelps made any inquiry as to the condition of the bond, and whether it had been signed by all the directors, nor that the bank required any explanation of the erasure of Bloomer's name. At the time the bond was signed by the defendants Wilbur was the treasurer of the quarry company, and its agent to sell stone and collect the avails. At that time Edwards was president of the company, and so continued until February 3d, 1860. Before the bond was signed Bloomer had agreed to sign it, and at the time of its execution was and still remained a man of responsibility and credit, all of which was well known to the defendants. The bank did not require that any particular persons should sign the bond; but that the signers should be interested in the quarry company and responsible. Previous to the execution of the bond the bank had an open account with Westervelt and Wilbur, and the president was acquainted with them, but was unacquainted with Edwards and Phelps. At the time of the failure of the company the bank held notes, discounted for the company, and unpaid, to the amount of $8,053.71. Wilbur was the agent and treasurer of the quarry company until April 2d, 1861, when Samuel P. Westervelt was appointed in his place. The avails of the paper discounted were placed to the credit of the quarry company and checked out by the treasurer. The account was overdrawn at the time of the failure of the company. The bank used reasonable diligence in trying to collect the notes of the makers, but was unable to do so.

HARVARD LAW SCHOOL LIBRARY

Upon these facts the case was reserved by the superior court for the advice of this court.

*Culver* and *Warner*, for the plaintiffs.

1. There was a legal delivery of the bond. The defendants contend that it was an escrow in Wilbur's hands, and that a deed can be delivered to a co-obligor as an escrow. But this is not so at the common law. 1 Co. Litt., 36 *a*. Blackstone says " an escrow is a delivery to a *third person* to hold, until some condition be performed on the part of the grantee." Cruise says " an escrow is a conditional delivery to a *third person* to keep until something is done by the grantee." Such is the law in Sheppard's Touchstone. The ancient English rule has been recognized in this country. 4 Kent's Com., 454 ; *Fairbanks* v. *Metcalf*, 8 Mass., 230 ; *Moss* v. *Riddle*, 5 Cranch, 351. The rule has also been fully considered in the recent case of *Deardoff* v. *Forseman*, in the Supreme Court of Indiana, 24 Ind., 481. The American cases seeming to hold a contrary doctrine, it is believed, are all predicated upon the authority of the case of *Johnson* v. *Baker*, 4 Barn. & Ald., 440. They are all distinguishable from this. That case was of a composition deed. The recitals of the deed are not given. The general policy of the law is that all the creditors shall sign these deeds. From the reported case it does not appear but that there was an express stipulation in the deed to that effect. The case discloses only the fact that the deed was signed by the defendant and delivered to one of the creditors in order that he might procure it to be signed by other creditors. It does not appear that the person who took the deed was its custodian for the purpose of its delivery under any circumstances. It is believed that nearly all the cases following the case of *Johnson* v. *Baker* are cases of official bonds. Those cases are to a great extent controlled by the provisions of the statutes requiring the bond. In some of the cases the courts hold that the statute requiring the bond makes it the duty of the depositary of the bond to enquire into the character of the security. The courts presuming that such enquiry has been made,

charge the party receiving it with all knowledge which such an enquiry would develop; and this is the express ground upon which some of the cases are decided. Thus Perkins, J., in the case of *Pepper* v. *The State*, 22 Ind., 399, says:— " We do not say that the same rule which applies to bonds taken pursuant to a statute would apply to private transactions." There is another class of cases where the party receiving the bond had actual knowledge that other sureties or co-obligors were to sign. Such are the cases of *Lovett* v. *Adams*, 3 Wend., 380, and *State* v. *Bodly*, 7 Blackf., 355. It will be observed also that the co-obligors in those cases were in fact strangers to the consideration of the deed and the subject matter of the contract, and in a technical view may be said to be competent to hold the deeds in escrow. But the authority of those cases cannot apply to this one, where the signers are not sureties but original parties, and maintain identically the same legal relations to each other. The case of *Moss* v. *Riddle*, 5 Cranch, 351, settled the point that a bond could not be delivered to one of two joint obligees as an escrow. This, the court held, resulted from the legal unity and identity of the obligees. In that case the bond became absolute, notwithstanding the condition upon which the obligor delivered it was not complied with. If one of two joint obligees cannot hold a bond in escrow on account of their legal identity, how can one or two joint obligors be a legal depositary of a bond in escrow. In this case the parties, Wilbur and the other signers of the bond, were but one, in every legal essential. In legal contemplation this obligation on the bond merges their actual identity and personality into a legal unity. From this it results that to hold this bond an escrow in Wilbur's hands for the benefit and use of Edwards and Phelps, is to hold that one can hold his own bond as an escrow. There are properly but two parties to a joint obligation. The obligors altogether constitute one party, and the obligees the other. *Millett* v. *Parker*, 2 Metc. (Ky.,) 616 ; *Taylor* v. *Craig*, 2 J. J. Marshall, 449.

2. The erasure of the name of Bloomer in the bond, was not notice to the bank that the bond was incomplete, or that it

was.to be signed by him before delivery. The uniform course of decisions has settled the law that an erasure is presumed to have been made at the time of or before the execution of the instrument. 1 Greenl. Ev., § 564 ; *Bailey* v. *Taylor*, 11 Conn., 531 ; Best on Presumptions, § 75. The law never presumes a fraudulent alteration of an instrument. Will it require a person in a commercial transaction to make a presumption against an instrument which the law does not make ? *Huntington* v. *Finch*, 3 Ohio S. R., 445.

3. The facts attending the negotiation for the loan, and the delivery of the bond estop the defendants from denying their liability under it. The tendering of the bond in blank by the bank was a simple stipulation for a loan upon condition of its signature by "responsible parties." All parties understood that it was a matter of indifference to the bank as to how many or who signed the bond. It was expressly worded so as to cut off any implication, either against the completeness of the bond for the want of proper parties, or for the want of interest in the signers. The line of discounts was for the individual benefit of the defendants. The bank had refused to treat with the corporation. The defendants had been informed by the recital of the bond that individual security of some sort must be lodged with the bank, and the defendants undertook to do it. Wilbur was their agent to deliver the bond. That was his express authority, but it would have been implied from the fact of his being authorized to negotiate the loan. The bond was delivered by Wilbur, a co-obligor, one who by the usual course of business would be considered the proper person to deliver it. But he had the custody of the bond for the purpose of delivery. In the language of Ellenborough, C. J., in the case of *Pickering* v. *Busk*, 15 East, 43, he had all the legal " external indicia " of the right to dispose of the bond, and " strangers cannot look to the private communications which may pass between a principal and his broker, and it must be presumed that the apparent authority is the real authority." Again, they knew that the discounts were being obtained upon their names and credit. They knew that the bond had been delivered. They knew they were re-

Hoboken City Bank *v.* Phelps.

ceiving benefits from such delivery. Having contracted to give security they were bound to see to it that their security was made good. They should have informed the bank of the condition of the signatures if they intended to claim from it. *Smith* v. *Moberly*, 10 B. Monr., 266; 1 Saund. Pl. & Ev., 1088.

*S. K. Wightman*, of New York, and *F. Chamberlin*, for the defendants.

There was no valid delivery of the instrument in suit.

1. It was signed by Edwards and Phelps and left with Wilbur, but not to be delivered by him as their deed, except upon conditions which have never been fulfilled. Those conditions, in substance, were that the writing was not to be their bond, nor was it to be delivered to the bank, nor used as a valid instrument, until signed by all the directors of the quarry company. It had been prepared by the plaintiffs, and it was arranged that eight individuals, directors, would sign it. Elisha Bloomer, one of them, was known to be responsible.

2. Edwards and Phelps, in delivering the writing to Wilbur, created him their custodian and special agent, with his assent, for the purposes expressly declared at the time of delivery; and Wilbur could not exceed his authority. A general agent is one authorized to transact all his principal's business, or all his business of some particular kind. If he exceeds his authority the principal is bound, provided the agent acts within the usual scope of the business, and the party dealing with him does not know that he is exceeding his authority. A particular agent is one employed specially in a single transaction, or one authorized to do one or two special things. If he exceeds his authority the principal is not bound; and it is the duty of the party dealing with him to ascertain the extent of his authority, and if he does not he must abide the consequences. 1 Parsons on Cont., 40; Smith Merc. Law, ch. 5, § 4; *Schimmelpennick* v. *Bayard*, 1 Pet., 265, 290; *Lobdell* v. *Baker*, 1 Met., 202; *Andrews* v. *Kneeland*, 6 Cow., 354; Story on Agency, § 126, note. Where the agency is not held

out by the principal, by any acts, or declarations, or implications, to be general in regard to the particular act or business, it must from necessity be construed according to its real nature and extent, and the other party must act at his own peril, and is bound to enquire into the nature and extent of the authority actually conferred. Story on Agency, §§ 127, 133; *Snow* v. *Perry*, 9 Pick., 542; *Rossiter* v. *Rossiter*, 8 Wend., 494; *Denring* v. *Smith*, 3 Johns. Ch., 344; *Lobdell* v. *Baker*, 1 Met., 193. And if such party trusts without inquiring, he trusts to the good faith of the agent, and not to that of the principal. Story on Agency, § 133; *Fenn* v. *Harrison*, 3 T. R., 757; *Pickering* v. *Busk*, 15 East, 38, 43; *Schimmelpennick* v. *Bayard*, 1 Peters, 265, 290; *East India Company* v. *Hensley*, 1 Esp., 112; *Helyear* v. *Hawke*, 5 id., 72; 1 Livermore on Agency, 107. Whoever deals with an agent constituted for a special purpose, deals at his peril when the agent passes the precise limits of his power. 2 Kent Com., 620; *Thompson* v. *Stewart*, 3 Conn., 172; *Batty* v. *Carswell*, 2 Johns., 48. There is nothing in the facts found by the auditor, tending to show that Edwards or Phelps ever, in any manner, held Wilbur out as having any general authority whatever in this matter. The power conferred by the company upon him to sell stone and collect the avails, did not authorize him to issue or deliver bonds of the company or of individuals to third persons, nor did he ever exercise any such general authority. In this single instance the plaintiffs delivered to him the writing, and it appears he undertook to obtain signatures, but not as agent for Edwards or Phelps. They signed as individuals, and delivered it, upon condition, to Wilbur as an individual, who then for the first time became their agent—their special agent to transact the particular business specifically confided to him by them severally.

3. Edwards and Phelps are chargeable with no negligence in not notifying the bank that the condition upon which the bond was left with Wilbur had not been performed. It is expressly found that they had no knowledge that the writing

had not been signed by all the parties until after the failure of the company.

4. It is immaterial that the bank did not know that the signatures of Edwards and Phelps were conditional until after the company had become insolvent. It is wholly immaterial whether a party receiving the delivery of a deed from an agent does or does not know the limitations of the agent's authority. He is chargeable by law with such knowledge. *Fenn* v. *Harrison*, 3 T. R., 757 ; *Fisher* v. *Campbell*, 9 Port., 210. Besides, it is clear that such want of knowledge in the plaintiffs was owing to their own negligence. The face of the bond was of itself sufficient to condemn it. At least it was enough, in connection with the circumstances, to put the plaintiffs upon inquiry and render them chargeable with notice. Had they made inquiry of Bloomer, or Edwards, or Phelps, the facts would at once have been made manifest. The consequence of such neglect should not be visited upon Edwards or Phelps, but should be borne by the plaintiffs.

5. There was nothing in the fact that Wilbur was a co-obligor that incapacitated him from holding the bond as an escrow. No reason can be found for such a rule. If, as in the case of *Moss* v. *Riddle*, 5 Cranch, 351, cited on the other side, one of several joint obligees can not receive a deed as an escrow, yet the rule cannot apply to joint obligors, for any one of several joint obligees has an implied authority to receive the deed for the rest, and it would often be difficult to make any other delivery in such a case ; but in the case of joint obligors it does not follow that each has authority to deliver the deed for the rest, and if he would not necessarily have authority to deliver he can clearly hold the deed as an escrow. It is held in *Woodward* v. *Camp*, 22 Conn., 457, that where a deed of a wife's land was executed by the husband and wife as grantors, the husband could hold it as an escrow.

HINMAN, C. J. The action is debt upon a bond. Two of the defendants, Edwards and Phelps, defend upon the ground

that the instrument was never delivered as their bond. The other defendants make no defense. Other questions were made and argued, but the conclusion to which we have arrived on this question renders them unimportant; and they have not therefore been considered.

The instrument was intended as a guaranty to the bank for contemplated advances to be made to the North Middlesex Quarry Company, of Cromwell, on notes and other securities of the company to be discounted by the bank. The defendants were members and directors of the company; and at and before the execution of the instrument, it was intended and arranged by the directors of the quarry company between themselves, that they should all execute the bond before it was to be delivered. And the instrument itself recites " that the above obligors are the members of and compose the North Middlesex Quarry Company, of Cromwell; " and had it been also executed by Elisha Bloomer of New York, this recital would have been true; but, as it was not executed by him, it was not true. Besides, the finding is direct, that at the time it was presented to Edwards and Phelps for their signatures they objected to signing it, when they were told by Wilbur, one of the obligors, that it would not be good unless signed by all the parties. And they then signed it, upon the express condition and understanding between them and Wilbur, that the instrument was not to be delivered to the bank, or in any other manner to be used as a valid instrument, or as their bond, until it had been signed by all the directors; and Wilbur was not at any time authorized to deliver the bond as the bond of Edwards and Phelps, except upon this condition; and Wilbur received the instrument after it was so signed by them for the purpose of procuring the signatures of the other parties and then delivering it to the bank. But Elisha Bloomer, one of the directors, and whose name had been inserted in the body of the bond as one of the obligors, refused to sign it, whereupon his name was erased, and in that condition it was delivered to the bank. The bank had no knowledge of the condition upon which Edwards and Phelps had signed it, and the latter had no knowledge that Bloomer

had not signed it until after the failure of the quarry company; and although they knew that the writing was delivered to the bank, and that the bank was discounting the company paper upon its credit, yet they supposed that Bloomer had signed it.

It. is elementary law that a bond is of no validity until there is a delivery of it to the use of the obligee. It is true the delivery may be inferred or implied from circumstances, but it can never take effect as a deed until the obligor delivers it as such, or the terms and conditions upon which it was to be delivered have been performed. In this case the finding is clear to the effect that there was never any intention on the part of either Edwards or Phelps that this instrument should be delivered, or take effect as their deed, until it was also executed by Bloomer; and as it never was executed by him, the holding of it as a valid instrument against them would practically subject them to a different and much heavier obligation than they ever contemplated as possible under any circumstances. Before we should feel justified in adopting a principle which would lead to this result, we should require a clear preponderance in the weight of authority to sustain us. But we are referred to nothing which will justify such a decision. We are told indeed that the text writers say that " an escrow is a delivery to a *third person* to hold until some condition be performed," and as Wilbur was one of the obligors it is claimed that he could not be such a third person, and therefore that his co-obligors are bound by his acts, however contrary to the instructions given him. But that this expression has never been understood as excluding a co-obligor from holding an instrument as an escrow is evident from the numerous cases in which it has been held that a deed left in the hands of a co-obligor, to be delivered to the obligee on the performance of some condition, has been held to be an escrow, and a delivery without the performance of such condition has been held to be inoperative and void. *Johnson* v. *Baker,* 4 Barn. & Ald., 440 ; *Pawling* v. *The United States,* 4 Cranch, 219 ; *Duncan* v. *The United States,* 7 Peters, 435 ; *Jackson* v. *Rowland,* 6 Wend., 666.

Other cases to the same effect might be cited.    The plaintiffs however do not deny that the current of authority upon the point is against them.    It is claimed, however, that the cases have generally arisen upon official bonds, which depend to some extent upon statutes authorizing such bonds to be taken. If this were so, we do not see that it could make any difference in the principle upon which they rest, the want of a delivery, which must always have been made in the case of a binding instrument.    The facts in some of the cases are very similar to those in this case, and in the absence of any countervailing authority they must be held to be decisive of it.

We are of opinion therefore that the defendants, Edwards and Phelps, are not liable upon the bond in suit, and we advise the superior court that they are entitled to judgment in their favor.

In this opinion the other judges concurred.