## JACKSON, ex dem. RUSSELL *vs.* ROWLAND.

Where a *deed* of lands was delivered as an *escrow*, and an *absolute* delivery subsequently made, but previous to the *second* delivery a judgment was obtained against the grantor, under which the land was sold, *it was held*, that the purchaser under the judgment was entitled to the land.

A deed delivered as an *escrow* does not take effect until the condition is performed, except where the operation of the conveyance would be absolutely defeated unless the first delivery should be permitted to have effect, as in the case of the death of the grantor before the condition be performed.

A transcript of a justice's judgment is good, although it does not, on its face, shew that the justice had jurisdiction.

A *tenant* may shew an outstanding title against his landlord, where the title of his landlord has expired, or been extinguished since the relation of landlord and tenant between them was created.

The relation of landlord and tenant does not exist between the tenant of a mortgagor and the assignee of a mortgagee, so as to entitle the former to notice to quit.

*It seems*, a defendant in ejectment in possession of lands without title, may shew that the title on which a recovery is claimed against him has passed out of the plaintiff.

Where *parol evidence* of the contents of a deed is given, on proof of *loss* of the deed, and the character of the witness who proved the loss is subsequently impeached, such impeachment cannot be insisted on in support of a motion for a new trial.

THIS was an action of *ejectment*, tried at the Washington circuit in June, 1829, before the Hon. ESEK COWEN, one of the circuit judges.

The action was brought for a room in a dwelling house, which the lessor of the plaintiff claimed to recover as a purchaser at a sale, by virtue of a *mortgage* executed by one A. Hay to T. Washburn, of a house and lot of land containing $5\frac{3}{4}$ acres, bearing date 6th September, 1819, proved by a subscribing witness on the 7th April, 1826, and recorded on the last mentioned day. The lessor of the plaintiff obtained an assignment of the mortgage on the 29th May, 1827, foreclosed the mortgage, and became himself the purchaser on 22d November, 1828. The mortgaged premises were conveyed by Washburn to Hay on the day of the date of the mortgage. The deed was not produced on the trial, in being proved by Hay, the mortgagor, to be *lost*. On the cross-

examination of one Gordon, a witness examined by the

plaintiff as to the execution of the deed, it appeared that on the day of the date of the mortgage, to wit, the 6th September, 1819, the deed and the mortgage were signed by Washburn and Hay. The price to be paid by Hay for the property was $1000 ; the mortgage was for the sum of $600 ; and the deed and mortgage, and two notes as collateral security for $300 each, were left in his hands by the parties, to be retained by him until some further arrangement should be made as to the residue of the consideration money. A year or more after the papers were thus left with him, he was desired by Washburn and Hay to procure the signature of Washburn's wife to the deed, and her acknowledgment ; which he did ; and he was then again directed by the parties to keep all the papers, as he had before done ; he accordingly kept them until the winter or spring of 1826, when, by the consent of the parties, he delivered the deed to Hay, and the mortgage and notes to Washburn. The plaintiff further proved that the defendant went into possession of the room in question as a tenant of Hay, under an agreement to pay a rent of $1,50 per week. Upon this evidence, he rested.

The defendant produced in evidence a *sheriff's deed* to S. D. Brown of the premises described in the mortgage, bearing date 8th January, 1829, made in pursuance of a sale had on the 8th April, 1826, by virtue of executions on *eight* judgments entered in the Washington common pleas against *Washburn*, the grantor of Hay, the mortgagor. The first judgment was docketed in June, 1825, and the others in August, 1825. Seven of the judgments were rendered by justices of the peace, transcripts of them filed in the county clerk's office, and entries made in the docket of the county clerk. An objection was taken to the transcripts, that they did not shew jurisdiction in the justices rendering the judgments, and the question was reversed by the judge. The defendant also gave in evidence a *commission of lunacy* duly issued, bearing date on the 8th August, 1825, by which the custody of the person and property of Hay was granted to a committee of two persons therein named, and called witnesses impeaching the character of Hay for truth and veracity.

NEW-YORK, Various questions were raised and discussed on the trial, most
May, 1831. of which were reserved by the circuit judge for the opinion
of this court ; and the only question submitted by him to the
jury was, whether the deed and mortgage, deposited with
Gordon in 1819, were left in his hands as *escrows*, and
whether they remained so until they were delivered to the
parties in 1826. After instructing the jury as to what in
law constituted a delivery as an escrow, and stating that
the presumption from the facts in the case was, he thought,
in favor of their being delivered as *escrows*, he charged them
that if they believed from the testimony that the deed, mort-
gage and notes were delivered to Gordon as *escrows*, and
were not to take effect, or be finally delivered, until something
further should be done or agreed upon by the parties, and
remained so until after the commission of lunacy issued, that
then they should find a verdict for the defendant, otherwise
for the plaintiff ; and in either case, subject to the opinion of
this court. The jury found for the defendant. The case
made was argued by

Jackson
v.
Rowland.

*S. Stevens,* for the defendant, and

*D. Russell,* for the plaintiff. On the argument, the coun-
sel for the plaintiff produced a *supersedeas* to the commission
of lunacy issued 14th March, 1827.

By THE COURT. It is contended by the counsel for the
defendant that there is a total failure on the part of the plain-
tiff, to shew by competent testimony title in himself to the
premises in question. He insists, that without proof of the
deed from Washburn to Hay, the lessor of the plaintiff shew-
ed no other title than that derived under the mortgage from
Hay, and that it gives him no right to recover ; that *parol*
evidence of the contents of the deed was admissible only on
the ground that its *loss* was proved by competent and satis-
factory evidence, and that the credibility of the witness prov-
ing the loss of the deed having been destroyed, all evidence as
to the contents of the deed should be disregarded. This objec-
tion comes too late. The witness proved the loss of the deed,

and evidence of its contents was then given without objection. The character of the witness should have been attacked before the parol evidence was given, for, should the judge have discredited his testimony, the plaintiff, for aught appearing to the court, might have offered other proof to the same point.

The question as to the delivery of the deed as an *escrow* was submitted to the jury, and they found against the plaintiff. This would preclude him from contesting that fact here, were it not that he complains of the charge of the judge on that point. There was no objection made to the charge on the trial, nor is it now pretended that the judge erred in stating any proposition of law. He remarked that the presumption from the facts in the case, he thought, was in favor of the deed and mortgage being delivered as an escrow. Even if the judge had erred in this estimate of these facts, yet, as he properly instructed the jury as to the law, we cannot interfere. There is no reason, however, for differing with the judge or jury on this point of the case, unless it should be to question the fact of a delivery, in any manner whatsoever, before 1826. The facts do not show an *absolute* delivery at the time the deed was left with Gordon ; and, for any purpose connected with the decision of the case as it now comes before us, there is perhaps no use in examining whether they establish a delivery as an *escrow* or not. If the deed was not delivered as an *escrow*, then there was no delivery at all until 1826. It is said in the *Touchstone*, "A delivery of a deed may be to a stranger, but it must be for, and on behalf, and to the use of him to whom it is made ; and if it be delivered to a stranger without any such declaration, it will not be a sufficient delivery." *Touch.* 57. 4 *Cruise*, 34. The general doctrine is, that a deed, delivered as an *escrow*, does not take effect until the condition is performed ; *Touch.* 59 ; but there are exceptions to that rule, as where the grantor dies before the condition is performed, 4 *Cruise*, 35, and in some other cases where the operation of the conveyance would otherwise be absolutely defeated. In these cases the deed, from necessity, is permitted to have relation back to the first delivery. Lord Coke remarks, that to some intent the second delivery has relation to the first delivery, and to some, not ; and yet, in truth,

NEW-YORK,
May, 1831.

Jackson
v.
Rowland.

the second delivery hath all its force by the first, and the second is but a consummation of the first; and therefore, in case of necessity and *ut res magis valeat quem pereat*, it shall have relation by fiction to his deed *ab initio*, by force of the first delivery. *Butter & Barker's case*, 3 *Rep.* 35. The rules laid down in that case, I believe, are sound; they were certainly well considered, for it was argued, as Lord Coke informs us, twenty-one times. The necessity which justifies a resort to fiction does not exist in this case. The grantor was not only able to make, and the grantee to receive what is called a second delivery, but in point of fact it was made, and the deed took effect only from that time. 4 *East*, 481, 12 *Johns. R.* 421, 2. Washburn is the source of title to both parties, and the plaintiff derives his from a conveyance which was not effective till the spring of 1826. This conclusion is adopted, without any regard to the questions growing out of the commission of lunacy issued against Hay. Considering all the difficulties removed which were started by the defendant on that matter, still are others remaining in the way to the plaintiff's right to recover that appear to us insurmountable.

The defendant shews title under a judgment of the court of common pleas of Washington county, docketed the 27th June, 1825. The sale was not only on the execution issued on that judgment, but on others which had been issued on judgments recovered before magistrates. These judgments, it was said, were not a lien on Washburn's real property, because the transcripts were defective. The cases of *Jackson* v. *Jones*, 9 *Cowen*, 182, and *Jackson* v. *Tuttle*, 9 *id.* 233 6 *Wendell*, 213, *S. C. in error* establish the sufficiency of the transcripts; but if not, the execution from the common pleas was in all respects unexceptionable, and made the sale to Brown valid. Brown's title overreaches that of the lessor of the plaintiff, and shews a title out of him.

But it is said the defendant, being a tenant of the lessor, is not permitted to avail himself of this outsanding title. A tenant cannot dispute the title of the landlord, so long as it remains as it was at the time the tenancy commenced; but he may shew that the title under which he entered has *expir-*

*ed,* or has been *extinguished.* The plaintiff places his right to recover upon a principle that recognizes and asserts such a position. The contract by which the relation of landlord and tenant was created in this case, was not made between the lessor and the defendant, but between Hay and the defendant; and the lessor claims to have acquired Hay's right to the premises, and to have succeeded to his character as landlord. If he has become landlord, surely the defendant, in case Hay should seek to eject him, might set up an outstanding title in the lessor. No well founded objection is perceived to the defendant's setting up a title acquired under a judgment since he became tenant, overreaching the title of his landlord. The title of Brown became effective in 1827, but it has relation to the time when the judgments against Washburn were docketed, which was in 1825, prior to the time when the mortgage took effect, if it ever did attach to the premises. But it may well be doubted whether the defendant can be viewed as a tenant to the lessor. It is said the latter may elect to consider him as such; but if it is only a matter of election, the right to set up the relationship of landlord and tenant or not, must be reciprocal. The tenant here has not elected the lessor for his landlord. Though the mortgagee is bound to give the mortgagor notice to quit, and this would seem to imply the relation between them of landlord and tenant, 2 *Johns. R.* 75, 4 *id.* 176, yet the purchaser of the mortgagor can claim no such right, and therefore no such relation exists between then. 2 *Johns. R.* 84. 4 *id.* 215. If the relation of landlord and tenant does not exist between the purchaser of the mortgagor and the mortgagee, it cannot exist between the lesse of the mortgagor and the assignee of the mortgagee.

It is said that the defendant is a mere intruder, and therefore cannot shew an outstanding title. This proposition is laid down too broadly. The case of *Jackson* v. *Harder,* 2 *Johns. R.* 202, which is the authority for the position, does not support it unqualifiedly. The defendant in that case either entered under the title he disputed, or was a trespasser; if he entered under the title, he could not dispute it so long as it remained as it was when he entered; and if he was a

trespasser, the lessor's *possession* of 8 or 10 years, under colour of title, was a title of sufficient strength to recover on against a mere intruder. But if the defendant in that case had shewn that all the title acquired by such a possession had passed out of the plaintiff, the latter could not have recovered. We are not aware of any case where a plaintiff, as destitute of title as a mere intruder, has been allowed to recover against a person in possession, without shewing title. By permitting such a recovery, the law would be justly charged with the absurdity of preferring a person out of possession without title, to an intruder in possession without title. There can certainly be no reason for such a preference; but if we take the plaintiff's assumption, that the defendant is a mere intruder, for true, it will not avail him any thing; for the facts of the case do not authorize us to call the defendant an intruder.

Judgment for defendant.

[*Remainder of cases of the May term in the next volume.*]