It is insisted that the referee was wrong in overruling the motion for a nonsuit, for the reason that no privity of contract between the parties was shown, but a *Page 376 
privity of estate only. Had the defendant gone into possession as a trespasser, this position might be correct. But he was in as a sub-tenant under the Sherwood lease. The plaintiff, being the owner of the residue of the term created by that lease (as for the purposes of this question we must assume), gives notice of his rights to the defendant, and states the terms on which the expired lease of the latter may be renewed. Here is something more than a mere privity of estate, viz: a direct proposition from the owner of the reversion to the tenant in possession for a renewal of his lease, and this proposition is met by a continued occupation without other reply. This, I think, laid the foundation for an implied contract. It was in law, a virtual assent to the terms prescribed in the notice. The referee was right, therefore, in overruling the motion for a nonsuit.
The next exception is that taken to the rejection of the offer to prove by Howard that the proposition of the witness Morse, to take the premises at a rent of $1200, was upon condition that certain improvements should be made to suit the business of Morse. If the referee was right in assuming as the basis of the recovery, the fair annual value of the premises, then this exception must be regarded as well taken. But it is clear, that if the defendant is liable at all, he is liable to pay at the rate of $1500, according to the terms of the plaintiff's notice. All the evidence, therefore, on the subject of value was immaterial. The fact that some immaterial evidence was admitted, by means of which the recovery against him was reduced, does not entitle the defendant to complain that other evidence, equally immaterial, which might have reduced it still more, was not admitted.
The principal question is that which arises upon the exception stated in the referee's report. It is set forth in the answer, in substance, that the assignment of the Sherwood lease from Ritchie to the plaintiff, was made at the request and for the benefit of Codd, and for the sole purpose of aiding the latter in the collection of his debt against *Page 377 
Sherwood. It is also stated that this debt had been fully paid before May 1st, 1851, by Hiram E. Howard, who had succeeded to the rights of Sherwood in the premises, and that Ritchie, on the 1st of May, 1851, surrendered all his rights in the premises to Howard, whose tenant the defendant then became. These facts the defendant offered to prove and his offer was rejected. The referee has not stated in his report, the reasons for the exclusion of the evidence; but the Supreme Court at general term appears to have held that it was properly excluded, upon the ground that the defendant, having entered under the lease from Sherwood to Ritchie, was estopped from denying the plaintiff's rights under that lease.
This, I apprehend, was a misapplication of the doctrine that a tenant is precluded from denying the title of his landlord. That doctrine, which is well settled, would no doubt preclude the defendant from disputing the validity of the lease from Sherwood or the rights of Ritchie under it; and that, whether the lease remained in the hands of Ritchie, or had passed into those of an assignee from him. But can the principle be so extended as to estop the tenant from denying the validity of a subsequent assignment of the lease, or of the rights acquired by such assignment? Such rights could have had no existence when he took possession. The tenant can be estopped from denying only what he has once admitted. To test this, suppose two parties claim the reversion under conflicting assignments: in whose favor is the tenant estopped? In a contest with one assignee may he not protect himself by showing that the true right is in the other? There can be but one answer to this.
Again, suppose a landlord dies during the tenancy: the tenant, in a contest with the heir, cannot dispute the title of the ancestor; but he may show a devise to a third person. Were it otherwise, the tenant would be at the mercy of both heir and devisee. He could defend himself against neither. The distinction is stated and was adopted in Jackson *Page 378 
v. Rowland (6 Wend., 670). The court there say: "But it is said the defendant, being a tenant of the lessor, is not permitted to avail himself of this outstanding title. A tenant cannot dispute the title of his landlord, so long as it remains as it was at the time the tenancy commenced; but he may show that the title under which he entered had expired, or has been extinguished." Again they say: "No well founded objection is perceived to the defendant's setting up a title, acquired under a judgment since he became tenant, overreaching the title of his landlord."
It is claimed in the present case that the lease to Ritchie was terminated, and all title under it extinguished, by the surrender to Howard. If the plaintiff's rights under the assignment were valid and subsisting, then the surrender was void; but the defendant, having never admitted those rights, is not estopped from denying them.
But it is urged that the proof offered was properly excluded for another reason. The assignment to the plaintiff being absolute in its terms, it is said that parol evidence was inadmissible to show that it was intended as security merely; and the case of Webb v. Rice (6 Hill, 219) is cited in support of this position. It was held in that case that in an action at law parol evidence could not be received to show that a deed, absolute upon its face, was intended as a mortgage. It was conceded, however, that the rule was settled otherwise in equity. In the case of Hodges v. The Tennessee Insurance Company (4Seld., 416), this court held that the rule in equity continued the same since the case of Webb v. Rice as before. The only question therefore upon this subject is, whether the equity rule is applicable to the present case, which is a purely legal action. As, however, since the enactment of the Code of Procedure, a defendant may avail himself of an equitable as well as a legal defence in all cases, whatever may be the nature of the action, there would seem to be but little room for doubt upon the point. (Dobson v. Pierce, 2 Kern., 156; Crary v.Goodman, id., 266; *Page 379 Code, § 150, subd. 2.) That a deed absolute on its face was intended as a mortgage, would, before the Code, have been an equitable defence, because it could not have been proved at law. In order that it should now be made available in legal actions, as provided by the Code, the evidence to establish it must be admitted in that class of actions.
It may still be said that, admitting it to be shown that the assignment to the plaintiff was merely collateral to the debt of Sherwood to Codd, and that this debt had been fully paid prior to May 1st, 1851, yet so long as the lease was not reassigned, the legal title remained in the plaintiff, and that Ritchie could not surrender the lease, while this title remained outstanding. The answer to this is, that if the assignment was collateral, it is the same as if the condition had been incorporated in the assignment itself, that upon payment of the debt the rights of the assignee should cease; and in such a case it is clear that no formal reassignment would be necessary. Whatever might be the effect of such an assignment in the hands of a subsequent bonafide assignee, it cannot be set up by the original assignee as evidence of a subsisting title in him, after full performance of the conditions upon which it was made.
There is still another question of fact which arose at the trial, but which was not passed upon by the referee, viz. whether the assignment to the plaintiff was intended as a security not only for the debt of Sherwood to Codd, but for that of Ritchie also. Should it turn out upon the new trial that the lease was assigned as security for both debts, and either remained unpaid on the 1st of May, 1851, then the case on the part of the plaintiff would be made out.
The judgment must be reversed and a new trial must be ordered, with costs to abide the event.
All the judges who had heard the argument concurring in this opinion,
New trial ordered. *Page 380