(139 App. Div. 338.)

### KIBBE v. CROSSMAN.

(Supreme Court, Appellate Division, Third Department.   June 29, 1910.)

1. LANDLORD AND TENANT (§ 63*)—DISPUTING LANDLORD'S TITLE—SCOPE OF RULE.

   The rule that a tenant is not at liberty to dispute his landlord's title does not preclude a tenant from showing as a defense that since the execution of the lease he has acquired a title superior to that of the landlord, or has acquired the landlord's title, or that the latter has expired

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by its own limitations, or has been extinguished subsequent to his entry under the lease, or from setting up a title acquired by him since he became tenant, overreaching the title of his landlord, or in any way showing that the relation of landlord and tenant has ceased.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 176; Dec. Dig. § 63.*]

2. LANDLORD AND TENANT (§ 63*)—LANDLORD'S TITLE—DENIAL.

A lessee, by entering into possession under the lease, admits the landlord's title only at the time of the entry.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 176; Dec. Dig. § 63.*]

3. LANDLORD AND TENANT (§ 63*)—LANDLORD'S TITLE—ESTOPPEL TO DENY.

Defendant, when sued for rent, under a lease, could show that plaintiff's title to the property, though in fact by deed absolute on its face, was in fact a mortgage executed by defendant's ancestor contemporaneous with a contract to convey the property to the latter on the making of specified payments which defendant and his ancestor had made, so that defendant was entitled to a reconveyance.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 63.*]

4. VENDOR AND PURCHASER (§ 187*)—PAYMENTS—DEFAULT—TIME—WAIVER.

Where a contract for the sale of land provided that, if the vendee did not complete his payments thereunder within 10 years, all previous payments should be forfeited, such provision was one for the sole benefit of the vendor, which was waived by his continuing to accept payments after the time had expired.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 374, 375; Dec. Dig. § 187.*]

Appeal from Trial Term, Franklin County.

Action by Euphemia K. Kibbe against John Crossman. From a judgment for plaintiff and from an order denying defendant's motion for a new trial, he appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Kellas & Genaway (John P. Kellas, of counsel), for appellant.
A. W. Sheals (Frederick G. Paddock, of counsel), for respondent.

COCHRANE, J. The complaint alleges that the defendant for several years prior to March 1, 1908, occupied a farm with certain personal property owned by plaintiff under a written lease and paid the rent thereunder annually to March 1, 1907, but had paid no rent for the year ending March 1, 1908, except certain taxes, and demands judgment for such unpaid rent.

At the trial plaintiff proved a written lease of the farm and personal property in question executed to the defendant in the year 1892 by one of the executors of the last will and testament of Linus Kibbe, deceased, and by the plaintiff, the term of which lease was therein stated to be one year from the 1st day of March, 1892. No lease has been subsequently executed. She also proved a deed of said farm to herself executed by the executors of the will of Linus Kibbe, deceased, in the year 1898. Defendant went into possession under said lease and recognized the same and paid rent thereunder until March 1, 1907. Since that time he has remained in possession, but has refused to pay rent for reasons which will hereafter appear. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rent was $350 a year for the first five years, after which it was by agreement reduced to $300 a year.

From the documents offered in evidence by defendant, it appears that in the year 1869 Seth Y. Crossman, the father of the defendant, mortgaged the farm to Alpheus Conger. That mortgage was satisfied March 7, 1883. On the same day Conger and his wife executed a quitclaim deed of the farm to the executors of the will of Linus Kibbe, deceased. Also on the same day said executors, together with the plaintiff herein, executed to said Seth Y. Crossman a contract to convey to him the farm for the sum of $4,150, to be paid in 10 equal annual payments of $415 each, with annual interest on all sums unpaid; such contract providing that on the completion of such payments in 10 years said executors and the plaintiff herein would convey the farm to Seth Y. Crossman by a quitclaim deed with covenants of warranty against the acts of the grantors. This contract recited that the farm was then occupied by Crossman and evidently contemplated that he should continue in the possession thereof until he received the deed under the contract. In addition to the mortgage which Crossman had executed to Conger in 1869, he had also apparently executed a deed under some kind of an arrangement whereby he retained an interest in the title because he remained in possession, and, when Conger satisfied that mortgage and conveyed the property to the executors of the Kibbe estate, the latter furnished the consideration for such conveyance at the request of Crossman and wrote him a letter inquiring as to the length of time during which he desired the contract of conveyance to run and the amount needed to pay Conger.

The legal situation of the parties therefore at the time of the execution of the lease to defendant in the year 1892 was that the lessors had the legal title to the farm subject to the contract to convey the same to defendant's father on the payment by him of the amount specified in said contract, which amount had been advanced by the lessors to satisfy a prior incumbrance on the farm. The jury might easily have found that the actual transaction was that the deed and contract of conveyance both dated March 7, 1883, constituted in fact a method of securing the lessors for a loan made for the benefit of Seth Y. Crossman, and that he retained the equitable ownership of the farm. The learned counsel for the plaintiff practically admits in his brief that such was the transaction. Seth Y. Crossman died in 1902 intestate, leaving as his heirs three children, including defendant.

The defense was that there had been a full compliance with the conditions of the contract of sale of March 7, 1883. The defendant endeavored to show that the full amount required by that contract had been paid. There was evidence tending to show an agreement between the parties that the rents under the lease were to be applied on the contract of sale, and a statement by one of the lessors to Seth Y. Crossman made in 1897, while the defendant was in possession under the lease, that payments under the contract of sale were almost completed, and that the rent which defendant was paying would soon constitute a full completion thereof. Defendant, if permitted to do so, might have established that with the rents paid by himself and other payments made by his father or the heirs of the latter or otherwise full payment had been made under the contract of sale, and

that the time had come when the heirs of his father, including himself, were entitled under said contract to a deed of the farm by the plaintiff, and that the title and interest of the latter had been extinguished.

Substantially all the evidence offered by defendant was excluded by the court on the theory that, being in possession under the lease, he was not at liberty to dispute the title of his landlord. That elementary principle does not preclude a tenant, when sued for rent, from showing as a defense that since the execution of the lease he has acquired a title superior to that of his lessor, or has acquired the lessor's title, or that the title of his landlord has expired by its own limitations, or has been in any manner extinguished subsequent to his entry under the lease, or from setting up a title acquired by him "since he became tenant overreaching the title of his landlord," or in any way showing that the relation of landlord and tenant has ceased to exist. Some of the authorities asserting these propositions are here cited: Van Etten v. Van Etten, 69 Hun, 499, 23 N. Y. Supp. 711; Cohen v. Carpenter, 128 App. Div. 862, 113 N. Y. Supp. 168; People ex rel. Ainslee v. Howlett, 76 N. Y. 574; Reich v. Cochran, 151 N. Y. 122, 127, 45 N. E. 367, 37 L. R. A. 805, 56 Am. St. Rep. 607; Jackson v. Rowland, 6 Wend. 670, 22 Am. Dec. 557; Lane v. Young, 66 Hun, 563, 21 N. Y. Supp. 838; Hetzel v. Barber, 69 N. Y. 1; Despard v. Walbridge, 15 N. Y. 374.

The defendant by entering into possession under the lease admitted the title of his lessor at that time and is estopped from denying the same; but the estoppel goes no further. It probably will not be controverted that defendant might show as a defense that subsequent to the lease he had purchased of the plaintiff the property in question. The analogy is the same in the present case. He admitted the validity of the lease and the right of the lessors to make it, but endeavored to show that subsequent thereto plaintiff had been paid for whatever interest she had in the property by his father or the heirs of the latter, or by all combined, and that the relation of landlord and tenant had therefore ceased to exist. If the lessors were in fact only mortgagees when they executed the lease, it is a defense that the mortgage has since been paid, and that the defendant has become the owner or part owner of the fee. In such case the lease has expired, and defendant is in possession of the farm no longer as lessee but as owner. The effort to show the actual title or interest of the lessors in the property when they executed the lease was not for the purpose of repudiating the original lease or disputing the lessors' title when it was executed, but was intended as one step in the process of proving the subsequent extinction of that title or interest. It was impossible to determine whether or not the lessors' interest had been subsequently purchased or extinguished until the nature and extent of that interest was ascertained.

It was not necessary that defendant should surrender possession and institute an action in equity to have his rights formally declared. If unjustly sued for rent, he could show the changed character of his possession and assert his rights as a defense. In Hetzel v. Barber, 69 N. Y. 1, 15, Easterly, the owner of an undivided one-third of certain premises, had assumed to rent to the defendant the whole

thereof. During the existence of the lease a judgment was recovered against Easterly under which the sheriff sold his interest in the land and the defendant became the purchaser at such sale. The court said:

"In April, 1869, Easterly assumed to rent the Dennis place to the defendant at an annual rent of $800, for two years from May 1st. The defendant paid the rent and entered under that lease, and occupied under it until he acquired the title as hereinbefore stated. The claim on the part of the plaintiff is that the defendant, having entered into possession of the premises as tenant of Easterly, cannot dispute his right to the possession, nor the right of his alienee, without first surrendering the possession. Without, in any way, disputing the general doctrine here contended for, there are plain and simple answers to the claim thus made. As to the one-third, as has already been shown, defendant's title is, under a purchase at sheriff's sale during the term, valid as against both Easterly and the plaintiff. A title thus acquired terminates and extinguishes the landlord's title, and can be set up as a bar to an action for rent, or an action to recover possession of the demised premises. Jackson v. Rowland, 6 Wend. 670 [22 Am. Dec. 557]; Nellis v. Lathrop, 22 Wend. 121 [34 Am. Dec. 285]; Despard v. Walbridge, 15 N. Y. 374."

The contention of the plaintiff that the defendant cannot assert his equitable rights in this action at law is sufficiently refuted in the case of Despard v. Walbridge, 15 N. Y. 374, 378, where the court said:

"It was held in that case (Webb v. Rice, 6 Hill, 219) that in an action at law parol evidence could not be received to show that a deed, absolute upon its face, was intended as a mortgage. It was conceded, however, that the rule was settled otherwise in equity. In the case of Hodges v. Tennessee Insurance Company, 8 N. Y. 416, this court held that the rule in equity continued the same since the case of Webb v. Rice as before. The only question therefore upon this subject is whether the equity rule is applicable to the present case, which is a purely legal action. As, however, since the enactment of the Code of Procedure, a defendant may avail himself of an equitable as well as a legal defense in all cases, whatever may be the nature of the action, there would seem to be but little room for doubt upon the point. Dobson v. Pearce, 12 N. Y. 156 [62 Am. Dec. 152]; Crary v. Goodman, 12 N. Y. 266 [64 Am. Dec. 506]; Code, section 150, subd. 2. That a deed absolute on its face was intended as a mortgage would, before the Code, have been an equitable defense, because it could not have been proved at law. In order that it should now be made available in legal actions, as provided by the Code, the evidence to establish it must be admitted in that class of actions."

It is true that by the terms of the contract of sale, if the grantee did not complete his payments thereunder within the 10 years, all previous payments became forfeited. But that was a provision which the grantor might waive, and the evidence tended to show that it had been waived by accepting payments of rent long after the time specified for such payments in the contract and by a transaction between one of the grantors and the grantee in 1897, when an adjustment seems to have been made as to the amount then remaining due, and the grantor stated that the rent which defendant was paying would soon complete the payments under the contract.

It may be that, if the evidence of defendant had been received, it would fall short of establishing the defense here outlined; but he should have been given the opportunity to establish such defense.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event.