Salvatore DeVita, Respondent, v. Cesare Pianisani, Appellant.

Supreme Court, Appellate Term, First Department, July 9, 1926.

Municipal Court of City of New York — jurisdiction — summary proceeding to dispossess — equitable defense that deed of landlord is mortgage may be interposed under Civil Practice Act, § 1425 — error to exclude evidence by tenant on that question.

The Municipal Court of the City of New York has jurisdiction of a summary proceeding to dispossess a tenant for non-payment of rent in which equitable defenses are interposed under section 1425 of the Civil Practice Act, and, therefore, in such a proceeding it was error to exclude evidence that the deed under which the landlord was holding and claimed title was in reality a mortgage.

Appeal by tenant from a final order of the Municipal Court of the City of New York, Borough of The Bronx, Second District, entered upon the verdict of a jury, awarding possession of certain premises to the landlord.

*John B. Coppola*, for the appellant.

*I. Gainsburg* [*Fred D. Kaplan* of counsel], for the respondent.

Levy, J. The landlord brought this proceeding against the tenant, as the parties are therein nominated, for non-payment of rent for December, 1925, and January, 1926. Upon the trial it appeared that the petitioner in January, 1925, obtained a deed to the property from C. Pianisani, Inc., a corporation controlled by the tenant; that the latter occupied the premises in question at the time of the conveyance and was still in possession at the time of the trial. No evidence appears to indicate that the tenant ever paid any rent to the corporation or that the landlord endeavored to collect it prior to December, 1925. The latter testified, however, that he had made an agreement with the tenant for the payment of seventy-five dollars per month for the occupancy of the premises, beginning with the last named month. Such a contract is denied by the tenant, who, while orally pleading a general denial, endeavored to prove at the trial that the deed under which the landlord

was holding, was in reality a mortgage. Evidence in this direction was excluded by the trial court, and although the landlord's documentary proofs seemed to indicate that the deed was given as security for a loan, the jury was instructed by the court to regard him as the legal owner of the property. A verdict was returned in favor of the landlord, and the sole question upon this appeal is whether it was error to exclude this evidence.

The proceeding was brought under the authority of section 1410, subdivision 2, of the Civil Practice Act by one claimed to be a landlord, against a tenant, as a holdover after default in non-payment of rent. To authorize such a proceeding under this section, it was necessary for the petitioner to establish that the conventional relation of landlord and tenant existed between the parties. (*People ex rel. Mitchell* v. *Simpson*, 28 N. Y. 55.) In Black's Law Dictionary the term *conventional* is defined as " Depending on, or arising from, the mutual agreement of parties; as distinguished from *legal*, which means created by, or arising from, the act of the law." As is said in *People ex rel. Mitchell* v. *Simpson* (*supra*, 57): " The relation of landlord and tenant is created by a lease, or demise, to which the landlord and tenant are parties, and this constitutes the *conventional* relation between them." This agreement may be express or implied, or it may even be created by estoppel, but in the latter case the creation is likewise not by operation of law, but by acts of the parties, which estop the tenant from denying the existence of the relation; and " unless this relation exists by agreement, and not by operation of law, the magistrate has no jurisdiction in such cases." (*Burkhart* v. *Tucker*, 27 Misc. 724, 725.)

The statute has also authorized the remedy in certain cases in which the conventional relation does not exist, such as in favor of a purchaser after perfected title against a former owner, whose property has been sold by virtue of an execution or under foreclosure by advertisement; also by an owner against a squatter. (Civ. Prac. Act, § 1411.) It is also available to one forcibly put out or kept out of lawful possession (Civ. Prac. Act, §§ 1412, 1414), notwithstanding the fact that there is not the slightest element of relation of landlord and tenant. (*Markun* v. *Weckstein*, 100 Misc. 668.) But it cannot be invoked by a mortgagee, or even a purchaser in the ordinary form of foreclosure of mortgage. The remedy in such a case, after appropriate judgment in foreclosure, is by an application for an order in the nature of a writ of assistance (*Greene* v. *Geiger*, 46 App. Div. 210), unless the tenant was not a party to the foreclosure action, in which event summary proceedings may be maintained. (*Commonwealth Mortgage Co.* v. *De Waltoff*, 135 App. Div. 33.) A mortgagee, whether before or after breach of

condition, is in a much less favorable position. When the statute now embodied in section 991 of the Civil Practice Act was passed (2 R. S. 312, § 57), prohibiting a mortgagee or his assignee or representative to maintain an action in ejectment for the recovery of possession of the mortgaged premises, " and the progress of judicial decision deprived him of the least estate in the land, and left him with only a lien, it followed that after as well as before condition broken the mortgagor remained owner, and could not be lawfully deprived of his possession, except by a valid foreclosure or his own consent, express or implied." (*Howell* v. *Leavitt*, 95 N. Y. 617, 622.) Even an agreement to turn a mortgage into an absolute deed in the event of default would not avail, as the maxim " once a mortgage, always a mortgage " governs the situation. (*Murray* v. *Walker*, 31 N. Y. 399, 403.)

It would seem, therefore, that if the tenant were able to show that the alleged landlord was really a mortgagee, he would not only defeat the proceedings under section 1410, but would also successfully bar the petitioner from bringing such proceedings under any other provision. The tenant was not permitted to introduce any such evidence, upon the theory that it called for the exercise of equity jurisdiction, which confessedly, the court did not possess. Clearly, this ruling was error, for all that was attempted was to challenge the claim of the petitioner that he was the landlord in the premises. The oral answer, in form a general denial, did not present any equitable defense; nevertheless, the tenant was well entitled to offer the proof. But if such a defense were actually tendered, it seems to us the situation would have been no different. This subject has been attended by much discussion and no less confusion, and our experience has demonstrated the need for higher clarity. In an effort in this direction let us examine into the nature and limits of the equitable defenses which may be interposed. The solution would appear to be bound up with the interpretation of section 1425 of the Civil Practice Act (added by Laws of 1921, chap. 199, as amd. by Laws of 1924, chap. 514), and to intelligently arrive at this requires a retrospect of the historical development of the section which, in part, provides as follows: "At the time the precept is returnable  *  *  *  the person to whom it is directed  *  *  * may answer, orally or in writing, denying generally the allegations, or specifically any material allegation of the petition, or setting forth a statement of any new matter constituting a legal or equitable defense, or counterclaim. Such defense or counterclaim may be set up and established in like manner as though the claim for rent in such proceeding was the subject of an action."

The original statute which authorized the remedy in summary

proceedings was enacted by chapter 194 of the Laws of 1820, and was intended to furnish a more expeditious means than the comparatively slow and costly method of ejectment for the recovery of possession of real property. It provided that the tenants for their defense might "make an oath that the term * * * is not expired, or that he, she or they do not hold or claim the said premises contrary to an agreement then existing between them and the person or persons applying for such summons as aforesaid; or * * * that such rent is not in arrear and unpaid * * *." Under this defense, which virtually amounts to a general denial, the tenant was permitted to show, in *Roach* v. *Cosine* (9 Wend. 227) that the deed of the landlord was, in fact, a mortgage. Such a defense, which is undoubtedly equitable in its nature, was probably permitted under the analogy of the common-law rule, which allowed a defendant in an action on simple contract, to give in evidence under the general issue, matters which would go to show that no sufficient contract was ever made, and to support, without specifically pleading them, such defenses as infancy, lunacy, coverture and the like. (See Moak's Van Sant. Pl. [3d ed.] 506, 649.)

By chapter 193 of the Laws of 1849 the provision for the defenses available to the tenant was amended by requiring "an affidavit * * * denying the facts upon which the said summons was issued, or any of those facts; * * *." This became a part of section 2244 of the Code of Civil Procedure on September 1, 1880 (Laws of 1880, chap. 178), except that the affidavit was denominated *answer* to make it accord with the forms of pleading in actions generally. Under the amendment of 1849 the tenant in *People ex rel. Ainslee* v. *Howlett* (76 N. Y. 574) was held entitled to prove that a lease under authority of a deed was in fact a cover for a usurious loan, and that this deed was actually a mortgage. According to the notes of the Commissioners of Revision (2 Throop's Code Civ. Proc. [1880] 362, anno. to § 2244), the changes made by the Code of 1880 did not preclude a tenant from proving that the tenancy was void or voidable in accordance with the rule in the case last cited. (See, also, *Reich* v. *Cochran*, 151 N. Y. 122.)

With the development of Code pleading our legal tribunals evinced a tendency, in summary proceedings, to bar affirmative defenses constituting new matter, limiting the defense to such as might be proved under general or partial denials. (*Bloom* v. *Huyck*, 71 Hun, 252; *Durant Land Imp. Co.* v. *East River El. Light Co.*, 15 Daly, 337.) In adopting this construction they seemingly followed the strict language of the statute. So, therefore, while in the ordinary action the Code had made provision for pleading new matter constituting defenses or counterclaims, the absence

of such authority in section 2244, as it was worded prior to 1893, was indeed deemed to limit the defense to matters of denial. As compensation for this strict construction, certain defenses which in an action could only be set up by an affirmative plea, were permitted to be established under a general denial; such as payment (*Durant Case, supra*), and the void character of the agreement (*Howlett Case, supra*).

In 1893 the Legislature put an end to this equivocal situation and placed the answer in summary proceedings upon substantially the same basis as an answer in an action. By chapter 705 of the Laws of 1893 it permitted, in addition to the general and specific denials, a " statement of any new matter constituting a legal or equitable defense, or counterclaim. Such defense or counterclaim may be set up and established in like manner as though the claim for rent in such proceeding was the subject of an action." The right granted the tenant to avail himself of equitable defenses under this amendment gave rise to a possible construction that the Legislature might have conferred upon inferior courts equity jurisdiction in contravention of article 6, section 18, of the Constitution of the State. That no such intention was manifest is fully indicated by a reading of section 2244 of the Code (now section 1425 of the Civil Practice Act). The comma following the words " legal or equitable defense " and preceding the words " or counterclaim," makes perfectly clear that the group of words containing the adjectives was not intended to qualify the word " counterclaim; " in any event, the adjective " equitable " was certainly not intended as a word of qualification upon the word " counterclaim," and the latter in its scope is confined to one only of *legal* nature. Furthermore, if additional support for this proposition were necessary, the provisions embodied in this section by chapter 132 of the Laws of 1920 giving the court power to grant affirmative judgment *for the amount found to be due on the counterclaim*, point unequivocally to the legislative intent to authorize only affirmative *legal* and not equitable relief. The right to a money judgment on the counterclaim was an extension of the one previously limited to a setoff against the amount of the landlord's demand, but could not serve the tenant in his endeavor to recover upon his excess claim, if any, as was held in *Wulff* v. *Cilento* (28 Misc. 551).

Some of the difficulties of equitable defenses in summary proceedings resulting from the interpretation of the amendment of 1893 are noted in *Constant* v. *Barrett* (13 Misc. 249), where the court recognizes the availability of such defenses in proceedings of this character, so far as they may go to defeat the landlord's claim. The problems suggested there, without any attempt at their solu-

tion, may be said generally to be no greater than such as may follow the admission of such pleas in the ordinary action at law. These are practically disposed of in the learned opinion of Judge Cardozo in the recent case of *Susquehanna S. S. Co.* v. *Andersen & Co.* (239 N. Y. 285) in which the distinction between equitable defenses and equitable counterclaims is forcibly pointed out, and their consequences clearly indicated. That was an action upon a charter party contract and one of the defenses was that the agreement did not express the true intent of the parties. The court construed the defense (at p. 291) as a claim " that enforcement is inequitable because fraud or mutual mistake has brought about the result that the writing is not a true expression of the meaning of the parties. This is good as a bar, and does not cease to be good because the defendant, if it had so chosen, might have asked for something more." Even though the matter alleged in the answer also constitutes an equitable counterclaim, the net result would be the same. " For, assuming it to be a counterclaim, the matter alleged also constitutes a defense and relieves the defendant as fully as the allowance of the counterclaim." (*Bennett* v. *Edison El. Il. Co.*, 164 N. Y. 131, 133.) The effect of such a defense is succinctly stated in the *Susquehanna* case (at p. 294): " We think the principle that underlies our law of equitable defenses was stated long ago with precision and discernment. ' The question now is, ought the plaintiff to recover; and anything which shows that he ought not is available to the defendant, whether it was formerly of equitable or legal cognizance.' (*Dobson* v. *Pearce*, 12 N. Y. 156, 168.) "

Indeed, there was a time when equitable defenses were practically unknown in common-law courts. By statute or judicial innovation, however, their jurisdiction in this direction has been greatly extended. In many cases where, formerly, a defendant was compelled to invoke, equity for relief against an unconscionable adversary, the former may now defeat the latter at law. For, by peremptorily barring the action, the same result upon precisely the same grounds is reached by the common law as could be effected in chancery by permanent injunctive measures. Therefore, the distinction between equitable defenses which are urged to defeat the proceedings and equitable counterclaims which require the granting of affirmative relief, as to which only a court of equity has jurisdiction, becomes of consequence and may be illustrated by the following cases. In *Simon* v. *Schmitt* (137 App. Div. 625) the tenant whose term had expired, defended in the summary proceeding brought against him, upon the ground that he was entitled to a renewal of the lease under his agreement. But the renewal clause left the question of the rent for the new term to be determined

by an appraisal, and the tenant had actually begun an action in the Supreme Court to compel specific performance of the covenant to thus renew. The Municipal Court was held to be without power to provide that the tenant was entitled to the appointment of appraisers and to a renewal if he accepted the result of the appraisal, because such a determination was a virtual decree of specific performance. While the tenant's plea was denominated an equitable defense, in reality it seemed an equitable counterclaim, which he could not effectively assert in a court of inferior jurisdiction. In *Burgener* v. *O'Halloran* (111 Misc. 203) the landlord instituted summary proceedings against the tenant, who claimed that under his lease he had exercised an option of renewal upon the same terms. In sustaining a final order in favor of the tenant, the Appellate Term of the Second Department made this generic utterance (at p. 207): " While, of course, the Municipal Court cannot grant affirmative relief, it can, in entertaining an equitable defense, go as fully as a court of equity can go into all the facts attending the making of the lease, to open the door to all the equitable defenses; and if it finds that the tenant is equitably entitled to a renewal of the lease, it can dismiss the proceedings and direct judgment awarding possession of the premises to the defendant."

It is undoubtedly true that if the mere giving of the notice of renewal had been sufficient *ipso facto*, under the terms of the lease to work extension, it would have been unnecessary to bring into exercise equitable jurisdiction for affirmative relief, and the tenant would have had a complete defense in proceedings against him as a holdover. (*Hausauer* v. *Dahlman*, 72 Hun, 607.) On the other hand, if it were broadly true that one who had a mere equitable right to a lease could defeat summary proceedings, the logical result, in the words of Judge Miller in *Simon* v. *Schmitt* (*supra*), would be a case of " a tenant without a lease." In *Armstrong* v. *Shapiro* (207 App. Div. 304) Mr. Justice Dowling writing, it was held that an option of renewal separately written and delivered a month after execution of the lease, required an action in specific performance to convert it into a lease, and the existence of such option was, therefore, no competent, equitable defense in summary proceedings. In the case of *Capet* v. *Parker* (3 Sandf. 662) the lessee after his tenancy had commenced, contracted to purchase the property. The landlord not only failed to convey but instituted summary proceedings to remove him. The tenant filed a bill for specific performance and enjoined the proceeding, on the ground that there were equities involved which the justice entertaining the summary proceeding had no jurisdiction to determine. The court held that when the tenant became a purchaser from the landlord,

the lease was merged in the contract and the former became the equitable owner in possession. The relation of landlord and tenant thereupon ceased to exist, and summary proceedings would not lie. Of course, the proof by a tenant of the fact that he was the vendee in possession would tend to destroy any claim of the conventional relation; still this might be an equitable defense affirmatively averred. But as the Municipal Court could not grant equitable relief, a final determination of the rights between the parties would require an appropriate action in the proper forum. The procedure is pointed out by McAdam, J., in *Rodgers* v. *Earle* (5 Misc. 164, 168): " It is clear that even the amendment of 1893, in regard to equitable defenses or counterclaims, would not give the tenant in such a case the relief he required. The inferior court could not, under that amendment, decree or enforce specific performance against the landlord. The most it could do would be to find for the tenant on equitable grounds, leaving either party to seek the necessary substantial relief in a court having equity jurisdiction. Two trials would be made necessary instead of one. Equity abhors a multiplicity of suits, and will enjoin against them when it can."

While the tenant in the instant case might have brought an action in equity to determine his rights completely and enforce his remedy accordingly, possibly with an injunction to restrain this very proceeding, still he is not barred, as it seems, from setting up the equitable defense in the inferior court.

In *Burkhart* v. *Tucker* (*supra*) the landlord instituted summary proceedings against the tenant in possession who was also the vendee under an agreement to purchase, predicating this upon the contract of sale which gave him the right to rescind for breach of condition and thereupon to take immediate possession. The court held the proceeding improper and declared the remedy of the petitioner to lie in ejectment or foreclosure of the contract. In *Roedmann* v. *Hertel* (78 Misc. 55) the landlord brought summary proceedings which were dismissed on the following facts: The day after an unsigned lease was given to the tenant by the landlord's predecessor, he paid a deposit and procured a receipt, which spoke of a five years' lease. He entered into possession and made permanent improvements. Thereafter, the petitioner, as grantee, obtained a deed which made reference to such lease. This court in the Second Department sustained the final order in favor of the tenant, on the ground that the landlord took title subject to all existing equities, and could not maintain summary proceedings to dispossess on the claim that the lease was void under the Statute of Frauds. Thus, the rule that a lease, even if otherwise void under that statute, would be enforced in equity if the lessee had changed

his position relying on its validity, was admitted to sustain an equitable defense in summary proceedings. This decision, sound in itself, contains the following dictum, at page 56, which unquestionably is not applicable now: " Municipal Courts have no equitable jurisdiction except in this one instance — equitable defenses — to dispossess proceedings. Section 2 of the Municipal Court Act permits a defendant to set up an equitable defense to summary proceedings.    *    *    * "

As it is of the utmost importance to avoid any misconstruction of the extent of the Municipal Court jurisdiction to entertain equitable defenses generally, it is not out of place to note cases, both chronologically prior and subsequent to the last one which, while they do not precisely deal with summary proceedings, are nevertheless useful in clarifying the situation. Incidentally these are helpful in showing the bounds of equitable defenses as distinguished from equitable counterclaims. *Pelgram* v. *Ehrenzweig* (51 Misc. 31) was an action for rent on a written lease, begun in the Municipal Court. The defense was that the agent of the landlord had fraudulently inserted the wrong apartment number in the lease, and the defendant had, therefore, refused to take possession. Testimony to this effect was rejected below on the ground that " the law did not give this court jurisdiction to go behind a written instrument." This court held that to be a mistaken view, saying (at p. 32):  " In the Municipal Court, in actions upon written contracts, though fraud may not be proven as the basis for affirmative relief, it is always available as a defense to a claim founded on the contract. *Smith* v. *Hildenbrand*, 15 Misc. 129; *Richards* v. *Littell*, 16 id. 339; *Malkemesius* v. *Pauly*, 17 id. 371."

The *Pelgram* case was retried, and upon the new trial the court found no fraud, but granted judgment to the defendant for the reason that the lease was executed under mistake. In reversing we held (58 Misc. 195) that the court erred in " attempting cancellation of a written instrument under seal on the ground of execution under mistake, which is not within the powers conferred upon the Municipal Court    *    *    *    and assuming cognizance of a jurisdiction expressly denied (Mun. Ct. Act, § 2, subd. 2)    *    *    *."  Judge Bischoff wrote a concurring opinion, in which he gave expression to the view that " the Municipal Courts are not authorized to entertain equitable defenses, except in summary proceedings to recover  the possession of land; and equity jurisdiction in any case is expressly denied.  Mun. Ct. Act, § 2, subd. 2."  The opinion of that jurist would indicate that the defense of " mistake " there was of an equitable nature and might be interposed in summary proceedings only, but not in actions at law in that forum.

His reasoning is supported by a literal reading of section 2, subdivision 2, of the old Municipal Court Act (Laws of 1902, chap. 580), which provided that " said court shall not have any equity jurisdiction, except however, that this subdivision shall not be so construed as to prevent a person * * * from setting up an equitable defense in summary proceedings." This has only historical importance now, as the Municipal Court Code in 1915 omitted the provision contained in section 2, subdivision 2, of the old act, thus removing any inference that equitable defenses in that court were limited to summary proceedings; and if the defense of " mistake " is proper to defeat the latter, it must also be admissible to defeat an action. But Judge Bischoff himself recognized the authority of Judge Leventritt's opinion in the earlier *Pelgram* case by holding, in *Walker* v. *Freedman* (114 N. Y. Supp. 51), that the defense of fraud in an action on a lease brought in the Municipal Court was entirely competent.

However, there is no question that the principle has been repeatedly asserted by this court that equitable defenses may be set up in the Municipal Court in all actions. (*Geller* v. *Kings County Mortgage Co.*, 97 Misc. 707.) This practice has probably been sanctioned by virtue of the spirit of section 69 of the Code of Procedure, later section 3339 of the Code of Civil Procedure, and now section 8 of the Civil Practice Act, by which " The distinction between actions at law and suits in equity, and the forms of those actions and suits, have been abolished." Such defenses are not necessarily confined to such as involve the mere question of fraud. Thus, in *Queensborough Gas & El. Co.* v. *Schoncke* (76 Misc. 190) the defense of equitable estoppel in an action for the value of electric current furnished was permitted. And in *Metropolitan Electric Protective Co.* v. *Ashlamian* (185 N. Y. Supp. 358), in an action for damages for breach of contract, the defendants pleaded both as a defense and counterclaim that the execution of the instrument by them was procured by the fraud of the plaintiff, aided by a mistake on their part. As an equitable defense the plea was held valid, but the judgment of the Municipal Court was deemed erroneous, because affirmative relief by way of damages was awarded to the defendant. The case of *Richards* v. *Littell* (16 Misc. 339), while arising in the City Court, is interesting because it deals with the limits of equitable defenses in actions at law. There the plaintiff sued for use and occupation. The defense was that the entry into possession was under a contract of sale, and this was followed by a demand of judgment for specific performance. We held that while the facts alleged were available as a defense, the matter of affirmative relief should be disregarded.

Let us now consider some of the cases that aid in ascertaining the attitude of the courts toward the specific defense that a deed or a lease held by the landlord was indeed a mortgage. In *Roach* v. *Cosine (supra)* the landlord advanced to the tenant Roach the sum of $3,900, and received an absolute conveyance, with an agreement that the latter should continue in possession of a portion of the premises for two years at a nominal rent, and that if the sum advanced was repaid within that period, the premises should be reconveyed to him. The court held, in the proceeding to dispossess, that the deed was a mortgage and that the relation of landlord and tenant did not exist. That decision is the more surprising as it was arrived at at a time when the courts were zealous to preserve the distinction between *legal* and *equitable* defenses. The evidence as to the true nature of the instrument was allowed there, probably because the court deemed it necessary, in order to preserve the intent of the statute, to admit any proof which would tend to show that the claimed conventional relation of landlord and tenant did not exist. In the case of *Webb* v. *Rice* (6 Hill, 219) the court held that in an action at law parol evidence could not be received to prove that a deed, absolute upon its face, was intended as a mortgage, although it conceded that the rule was otherwise in equity. But with the adoption of the Code of Procedure the line of demarcation between the use of legal and equitable defenses in actions at law was practically eliminated. Thus, in *Despard* v. *Walbridge* (15 N. Y. 374, 378), which was an action for rent, the court said: " The only question therefore upon this subject is, whether the equity rule is applicable to the present case, which is a purely legal action. As, however, since the enactment of the Code of Procedure, a defendant may avail himself of an equitable as well as a legal defense in all cases, whatever may be the nature of the action, there would seem to be but little room for doubt upon the point. (*Dobson* v. *Pearce*, 2 Kern. [12 N. Y.] 156; *Crary* v. *Goodman*, Id. 266; * * *.) That a deed absolute on its face was intended as a mortgage, would, before the Code, have been an equitable defense, because it could not have been proved at law. In order that it should now be made available in legal actions, as provided by the Code, the evidence to establish it must be admitted in that class of actions."

The fact that in the preceding case the subject of the action was one for rent, does not render the principle less applicable to defenses in proceedings of this kind; for section 1425 of the Civil Practice Act (added by Laws of 1921, chap. 199, as amd. by Laws of 1924, chap. 514), in words that are by no means uncertain, provides that a legal or equitable defense or counterclaim may be set up in such pro-

ceedings as if the controversy were an action in which the subject of the claim was rent. This would seem to dispose of the doubt entertained by the General Term in *People ex rel. Ainslee* v. *Howlett* (13 Hun, 138), where it was observed that parol evidence was probably incompetent in summary proceedings to prove that an absolute deed was intended only as a mortgage. This view, while recognizing the rule in the *Despard* case, was based upon the apparent exemption of summary proceedings from its application, by reason of the force of section 471 of the original Code of Procedure. The provision sanctioning such exemption was repealed with the enactment of the Code of Civil Procedure; and the express language of the present statute which makes all defenses provable in the same manner as if the proceeding were an action for rent, obviously disposes of the last vestige of doubt in the premises. Parol evidence, as is apparent, is, therefore, now admissible to prove the defense that a deed was intended as a mortgage (*Mooney* v. *Byrne*, 163 N. Y. 86; *Carr* v. *Carr*, 52 id. 251), with the precaution, however, noted by Judge Cardozo in the *Susquehanna* case, that the entire cause in support of such an equitable defense must be " of the clearest and most satisfactory character." Again, in *Ensign* v. *Ensign* (120 N. Y. 655) the identical rule of evidence is stated, the court employing the following language (at p. 656): " The burden of establishing an oral defeasance to such a deed is an onerous one resting on whoever alleges it, and its existence, and also its precise terms, must be established by clear and conclusive evidence, otherwise the strong presumption that the deed expresses the entire contract between the parties to it is not overcome." (See, also, *Streeter Const. Co.* v. *Kenny*, 209 App. Div. 697; *Wilson* v. *Parshall*, 129 N. Y. 223; *Matthews* v. *Sheehan*, 69 id. 585; *Campbell* v. *Dwarborn*, 109 Mass. 130; *Coyle* v. *Davis*, 116 U. S. 108; *Howland* v. *Blake*, 97 id. 624.) In *People ex rel. Ainslee* v. *Howlett*, as already observed, a tenant resisted the proceeding on the ground that the lease under which the petitioner was claiming, was executed pursuant to a usurious agreement by which the landlords undertook to loan the tenant the sum of $5,600, the latter agreeing to pay for the use of the same $500 over lawful interest; the tenant gave the landlords a deed to the premises, of which he was in possession as owner, and they executed a contract to reconvey the property upon payment of the loan. In order to cover up the usury, a lease was executed between the landlords and tenant at a nominal rent in the very sum in excess of the lawful interest, namely, $500. The Court of Appeals held that it was error not to permit a trial of the issues thus raised. (76 N. Y. 574.) In *Reich* v. *Cochran* (*supra*), in which a different state of facts was involved, this principle was

expressly approved.   In *Garrie* v. *Schmidt* (25 Misc. 753) the tenant set up certain denials and the defense that the petitioner was not the owner, but a mere mortgagee; that the tenant, a former holder of the fee, was entitled to reconveyance of the property upon tender of a fixed sum of money by way of redemption.   It was held on appeal that the award of the final order to the petitioner upon the pleadings was improper, but it was suggested, and we believe by way of dictum, that the equitable defense sought to be introduced was unavailable because it necessitated the granting of equitable relief.   However, if the effect of this decision was to deny the tenant the right of introducing that proof by way of *defense only* for the purpose of defeating the proceedings, it must be deemed to be in conflict with the weight of authority.

Applying the principles gathered from this discussion to the case before us, the fact that the landlord had the legal title and the tenant had the use and occupation of the premises, was insufficient in itself to create the conventional relation.   (*Preston* v. *Hawley*, 101 N. Y. 586.)   Here, the landlord, evidently realizing the necessity of proving more than mere title in him and use and occupation by the tenant, attempted to establish an actual agreement for the payment of a fixed rental per month.   While this was denied, the jury might seem to have passed upon the disputed question of fact in a manner which would not warrant us to disturb the verdict.   But the circumstance occurring upon the trial which quite obviously influenced the result, appears to merit reflection. After its retirement and considerable deliberation, the jury returned and made the following request: " The Foreman: The jury would like to be instructed on whether De Vita is the present owner of the property according to the deed.   The Court: He is the legal owner of the property and we must recognize him as such."

It thus becomes evident that the refusal of the trial judge to permit the jury to consider the question of the nature of the landlord's title, and his instruction in that regard, tantamount to a complete foreclosure of considering the landlord as other than the legal *owner* of the property, operated to the grave prejudice of the tenant.   True it is, that a tenant is precluded from denying the title of his landlord, but this rule merely estops him from challenging the title as it existed at the time when the lease was made or when the relation arose.   (*Kibbe* v. *Crossman*, 139 App. Div. 338.) Moreover, the tenant here occupied the premises from January, 1925, without any attempt on the part of the landlord to collect rent until nearly a year thereafter.   At no time did he pay rent or recognize any obligation to do so.   He may be said to have been in a position, therefore, to deny the  andlord's title, and this

he attempted to do by showing that the writing given to the latter, in the form of a deed, was in fact a mortgage. (Real Prop. Law, § 320.) Such a defense, if established, would doubtlessly defeat this proceeding.

Finally, we may well be committed to the principle that, when charged with the non-payment of rent, a tenant may unquestionably show by *any* defense that no rent is due; and in that behalf the inferior courts may take cognizance of equitable defenses only to the extent of arresting the procedure and frustrating the claim of the adverse litigant, whether he be plaintiff in an action or the petitioner in a proceeding, to the end that he may not prevail.

The final order is, therefore, reversed and a new trial ordered, with thirty dollars costs to the appellant to abide the event.

All concur; present, DELEHANTY, LYDON and LEVY, JJ.