WILLIAM A. HENRICHSON, Respondent, *v.* EDWARD G. FULTON, Appellant, et al., Defendants.

Supreme Court, Appellate Term, First Department, January 9, 1945.

*Louis Susman* for appellant.

*Arthur I. Goldstein* for respondent.

HAMMER, J. Action against defendant copartners to recover $300 rent in advance due May 1, 1944, of entire building 446 West 54th Street, Manhattan.

Defendant-appellant Fulton's answer pleads as a defense that by reason of war conditions there is a shortage of business premises; that the greater part of his business is devoted to the prosecution of the war effort; and that upon receipt of written notice from plaintiff, given one month before the expiration of the term, increasing the rent from $1,500 to $3,600 a year, payable in equal monthly installments of $300 in advance, in the event of the tenant's election to hold over the term, defendant endeavored to, but failed to, rent other suitable premises in the city of New York.

An offer of judgment in the sum of $125, the prior monthly rent, instead of $300 as demanded in the summons, was filed by defendant.

After the service of the landlord's written notice, and prior to May 1, 1944, the parties and their attorneys met for the purpose of discussing the amount of rent to be paid. Appellant refused to pay $300 a month and offered to pay $175 a

month on a two-year lease; and the landlord's attorney suggested $200 a month as a fair sum, but plaintiff refused to agree with his attorney and said he wanted $225 a month.

It is elementary that a landlord may treat a yearly tenant holding over his term either as a trespasser or as a tenant holding over for another year under the terms of the prior letting so far as applicable.

The question here is whether the landlord may by prior notice require his overholding tenant to pay as rental for the renewed term any sum he pleases to fix in the notice notwithstanding objection by the tenant made prior to the proposed renewal date.

In *Despard* against *Walbridge* (15 N. Y. 374, 376), where the defendant was held liable for an increased rent, the court said: "The plaintiff * * * gives notice of his rights to the defendant, and states the terms on which the expired lease of the latter may be renewed. Here is something more than a mere privity of estate, viz: a direct proposition from the owner of the reversion to the tenant in possession for a renewal of his lease, and this proposition is met by a continued occupation without other reply. This, I think, laid the foundation for an implied contract. It was in law, a virtual assent to the terms prescribed in the notice."

In *U. M. Realty & Imp. Co.* v. *Roth* (193 N. Y. 570) the lessee of premises whose term began on the expiration of the prior lease sued the prior tenant holding over his term for rent. The questions were presented on the pleadings. The complaint of the new tenant contained ten counts. The theory of the first five counts was that by the new lease, running from the expiration of the term of the defendant's prior lease, the landlord transferred to the plaintiff all his rights to the control, occupancy and possession of the premises for the new term, and the prior tenant remaining in possession without the consent of the plaintiff, the latter elected to hold the defendant as tenant for another year. It was pleaded in the second five counts that before the expiration of the defendant's term defendant requested the plaintiff, the new tenant, to permit him to occupy the premises after the expiration of his term, that the plaintiff refused permission and notified defendant that if he remained in possession after his term plaintiff would elect to hold him as tenant for another year upon the same terms as provided in defendant's lease; that defendant held over, and that he thereby agreed to hold as tenant of the plaintiff for an additional year.

The court held (Chief Judge CULLEN writing the opinion) that all of the counts were good. As to the first five counts it is said (p. 576) that " the right of the landlord to treat the holdover as a tenant for a new term does not spring from the contract of the parties but is the penalty imposed by law upon the trespassing tenant. It is an incident of the landlord's estate and that estate and possession under such estate he has conferred upon the new tenant. It is undisputed that if, during the term of the first lease, the landlord had conveyed his reversion the conveyance would have carried to his grantee the right of election. But it must be borne in mind that the landlord's right to an election could not accrue or come into existence during the term of the first demise, but only after its expiration. When, therefore, this right first accrued the new tenant was entitled to the estate in possession as successor of the landlord."

The two dissenting judges were of the opinion that the first five counts were bad, but that there was sufficient in the second series of counts to present the question to the jury whether under the facts pleaded retention of possession by the tenant was an acceptance of the terms proposed by plaintiff. (See Keogh on Landlord & Tenant, p. 16.)

Adjudications in other jurisdictions authorize the statement that " A contract for a different rent has been held to arise when the landlord notifies the tenant that if he holds over he must pay an increased rent, and the tenant makes no reply and does hold over, this being regarded as an acceptance of the landlord's proposition. If, however, the tenant protests against such increase, there can, by the cases generally, be no implication of assent by him ". (2 Tiffany on Landlord and Tenant, p. 1490.)

It is evident from the facts here that the only theory upon which defendant could be held for the increased rental required by plaintiff's notice is that he expressly or impliedly agreed to pay such increase, and as it is undisputed that he refused to accede to the landlord's demand the recovery cannot stand. On the present record we are not called upon to decide whether plaintiff may still elect to treat defendant as a trespasser.

The judgment and order should be reversed, with ten dollars costs, and the motion denied, ith ten dollars costs.

SHIENTAG and HECHT, JJ., concur.

Judgment and order reversed, etc.