Bernard Tomson, J.
This action illustrates the murky relationship between the paramount landlord and his subtenant, which often follows the cancellation of the paramount lease. The complaint seeks to recover rent which the landlord urges is due because the defendant did not vacate the premises on a day set in a notice. The notice stated that the failure to vacate would result in a tenancy for a year at increased rental.
On September 9, 1960, the paramount landlord (the plaintiffs here), in a summary proceeding, recovered possession of the apartment house where the defendant was a subtenant but was not made a party to the summary proceeding. On September 16,1960, the paramount landlord instituted a summary proceeding against the subtenant, where the defendant was referred to as the “ tenant”. The petition further refers to an agreement between the “ tenant and petitioner’s predecessor in possession ”. The “ wherefore ” clause in the latter proceeding* is of interest. “ Wherefore your petitioner prays for a final order awarding, to the said landlord possession of said premises together with costs of this proceeding and for a warrant to remove said tenamt from possession of said premises; and for a judgment for rent in arrears for the Sum of $220 ’ ’. (Emphasis supplied.)
*153 On September 17,1960, the defendant paid the plaintiffs $220. On September 19, the plaintiffs sent the defendant a letter which read in part as follows:
“ Please take notice that if you fail to conclude and execute a lease with the landlord before September 30, 1960 for your continued possession of apartment L12 in Building 1195 East Broadway, Hewlett, Long Island, and if you remain in possession of said apartment which you occupy on October 1, 1960, and/or thereafter, that the landlord elects and will treat and consider you as its tenant for one year and your rent for the apartment will be $270. monthly, payable in advance. * * *
“ Since we will be closed Thursday and Friday of this week for the Jewish New Year, we will again have a full staff on the premises, this coming week-end and at other times you can sign your lease directly with Mr. Cymrot at the office.”
On September 21 the defendant’s wife died. On October 3 the defendant sent a check to the plaintiffs in the sum of $220 which was deposited on October 4. On October 6, the plaintiffs wrote the defendant a letter, which in part stated: “We accepted the $220. rent check from Mr. Schwartz not on any monthly basis but on the assumption that he would execute a three year lease as per his conversation with Mr. Cymrot. If he does not wish to abide by the notice of September 19th or negotiate a different lease then we regret to advise that we are compelled to take the legal position set forth in said letter of September 19th and the check for $220. will be accepted on account of the rent for October.”
A check in the amount of $220 in payment of the November rent tendered on October 31 was returned on November 7, on which day this action was instituted.
The indorsement on the summons reads: 16 First cause of Action: Balance due in the sum of $50. for rent for month of October, 1960 for apartment L12 premises 1195 E. Broadway, Hewlett, New York. Second cause of Action: Bent for the month of November, 1960 in the sum of $270 for the above mentioned premises. Total amount due $320., no part of which has been paid although duly demanded and said sum is still due and owing to plaintiff.”
The answer is a general denial and contains certain affirmative defenses and a counterclaim which need not here be detailed.
The plaintiffs urge that when the subleasor was evicted the defendant here became a mere trespasser, or at most a bare licensee. See Basch, Landlord and Tenant (vol. 1, § 102 et seq.) *154 where the precarious position of a subtenant is detailed. In section 104 it is stated:
“ If a paramount lease be cancelled by its own terms, the sublease likewise is cancelled. If the subtenant then wishes to vacate, he may do so. If he does not vacate, he must continue to perform the terms of his sublease even though loss of possession is imminent,— when the paramount landlord takes the proper steps to evict him. (§§ 102, 103, ante.)
“ Therefore, a subtenant, whose sublease has been prematurely cancelled by a cancellation of the paramount lease, must, if he desire to continue in possession, enter into a new agreement with the paramount landlord.
‘ ‘ Such a new agreement with the paramount landlord constitutes a new lease, and if for a longer period than one year, must be in writing.
‘1 If the subtenant cannot, or does not wish to enter into such new agreement with the paramount landlord, the subtenant should not misunderstand his position. Merely because the landlord may not have joined him in the summary proceedings against the subleasor, will only give the subtenant a temporary right to possession.”
(See, also, City of New York v. Fink, 130 Misc. 620; Christatos v. United Cigar Stores Co. of America, 144 Misc. 322; Gasoff Realty Corp. v. Berger, 188 Misc. 622; Geist v. State of New York, 3 Misc 2d 714.)
It is difficult to understand how, on the facts here presented, the plaintiffs insist that the defendant remained a trespasser and that no conventional landlord and tenant relationship was created in the face of the correspondence and earlier pleadings where there is continued reference to the defendant as a “ tenant.” If, on September 17, the sum of $220 was paid the plaintiffs merely for ‘ ‘ use and occupation ’ ’ without changing the status of the defendant from trespasser to tenant, can it be properly urged that this payment covered only the period from September 9 to 17 ? In any event, the court holds that a landlord and tenant relationship was created whether it was a tenancy from month to month, at will, or by sufferance.
What was the effect of the service of the notice on September 19?
Where the landlord by reasonable notice notifies a month-to-month tenant of an increase in rent, the tenant is deemed to have assented to pay such increased rent by holding over beyond the date fixed in the notice. (Avelino v. Fasano, 15 Misc 2d *155 635; Fordham Hill Associates v. Fiebach, 21 Misc 2d 277; 4145 Corp. v. Brown, 19 Misc 2d 957; V. G. C. Realty Corp. v. Rosa, 193 N. Y. S. 2d 678; Breslaw v. Rightmire, 119 Misc. 833; Commercial Cable Bldg. Co. v. McKenna, 168 N. Y. S. 13.) In principle, if such a notice is effective for the purpose of creating a new provision as to rent, it would appear equally effective to create a new term. (Cf. 1 Rasch, Landlord and Tenant, pp. 148, 149; Harrison v. Berkowitz, 202 Misc. 799; Fordham Hill Associates v. Gelbert, 9 Misc 2d 721; Hendrickson v. Fulton, 183 Misc. 914; Kaufman v. Bartels, 182 Misc. 128, motion for leave to appeal denied 268 App. Div. 864; Despard v. Walbridge, 15 N. Y. 374; Levin v. Rosenkrantz, 86 N. Y. S. 2d 271.)
The “ reasonable ” notice is often referred to as a “ 30-day ” notice, perhaps because of the 30-day notice provision found in sections 228, 232-a and 232-b of the Beal Property Law, compliance with which is required to terminate monthly tenancies, month-to-month tenancies, and tenancies at will or by sufferance. Note Basch, Landlord and Tenant (vol. 2, pp. 838, 839) where it is stated: “ However, this situation should not be confused with a notice given to a month to month tenant of an increase in rent, as a basis for a non-payment of rent proceeding. In order to increase the rental to be paid by a month to month tenant a thirty-day notice of such increase must be given to him. But, such a notice of increase is not statutory, and, therefore, need not be unequivocal as in the case of a notice to terminate a tenancy. Therefore, where a landlord by a thirty clays’ notice notifies a month to month tenant that beginning with the next rental month, his rent will be increased, and that upon failure to pay such specified increase he will be required to remove, such notice is sufficient as a basis for a non-payment of rent proceeding brought for non-payment of the increase. * * * All the landlord has said is that the rent is increased, and that if it is not paid, he will exercise his right to remove the tenant. This is sufficient as a basis for a non-payment proceeding, however ineffective it may be as a basis for a holdover proceeding. ’ ’ (Emphasis supplied.)
The cases also refer to a 30-day notice. (See Acierno v. Kutchuk, 196 Misc. 514; A. & S. Constr. Co. v. Brock, 201 App. Div. 584; Evelino v. Fasano, supra; Almin Realty Corp. v. Livingston, 103 N. Y. S. 2d 166; Paray Realty Corp. v. Goodwine, 194 Misc. 538; Giampaolo v. Anatra, 191 Misc. 999, affd. 192 Misc. 428.)
*156 The difficulty here with the plaintiffs’ position is that, whether judged by the “ 30-day ” requirement or that of “ reasonableness ”, their notice was inadequate. The notice dated September 19, provided only 11 days for the tenant to determine whether he would vacate or elect to stay on, with the result that his rent would be increased by almost 23% and the term of his tenancy lengthened to that of a tenancy for one year. Even if we disregarded the fact that the tenant’s wife died in the interim, it is surely of some significance in considering the question of reasonableness that the 11-day period also included the Thursday and Friday of the Jewish New Year, a fact referred to in the notice itself. Judged by any standard, the notice was not “ reasonable.”
A collateral question is raised which need not be determined here since the notice is held to have been inadequate. Section 232-c of the Real Property Law, added as a new section by chapter 114 of the Laws of 1959, effective September 1, 1959, abolished the rule which, prior to September 1, 1959, gave the landlord the option to treat a holdover as a tenant for a new term equal to the term of the previous tenancy. The new section permits the landlord to treat the holdover only as a tenant from month to month.*
*157 The language of section 232-c applies, however, by its terms, only to the situation where the holding over is by a “ tenant whose term is longer than one month.” This language would seem to exclude specifically the situation, such as here, where the landlord seeks to impose upon a tenant whose term is one month or less, a tenancy for one year by the service of a “ reasonable ’ ’ or “ 30-day ” notice. Although it seems fairly obvious that the intent of the Legislature in enacting section 232-c would be rudely violated by such a result, the explicit language of the section may permit the creation of a tenancy for a year where a month-to-month tenant does not vacate after “reasonable ” notice.
The specific holding here on the facts presented is that the notice of September 19 was inadequate to increase the rent or to create a tenancy for a year. The plaintiff is entitled to recover only the sum of $220 tendered in payment of the November rent and returned.
Judgment is directed to be entered for the plaintiff in the sum of $220, with interest, costs and disbursements. The counterclaim is dismissed.

 The rationale for this change is to be found in the Report of the Law Revision Commission which accompanied the proposed N. Y. Legis. Doe., 1959, No. 65 (D) reads in part as follows (p. 144 et seq.):
The commission believes that the rule giving the landlord the option to hold the tenant for a new term should be abrogated in cases where the term after which the tenant holds over was longer than one month. Where the tenancy was for a term of one month or less, the automatic creation of a new tenancy for a term of the same length has advantages of certainty, to the tenant as well as the landlord, that offset the hardship to a tenant whose holding over was not intended. But where the tenancy is for a term longer than one month, the effect of the present rule is ordinarily to impose a penalty on the tenant disproportionate to the fault of the tenant and to the damage the landlord may suffer.
The statute proposed by the Commission provides that where a tenant whose term is longer than one month holds over after the expiration of his term, such holding over shall not give the landlord the option to hold the tenant for a new term solely by virtue of the tenant’s holding over. It also provides that, in the case of such holding over, the landlord may remove the tenant in any manner permitted by law, or, if the landlord shall accept rent for any period subsequent to the expiration of such term, then, unless an agreement express or implied is made providing otherwise, the tenancy created by the acceptance of such rent shall be a tenancy from month to month commencing on the first day after the expiration of such term.
The proposed statute omits any provision creating any tenancy by operation of law as a result of the holding over. The landlord’s right to remove the tenant may of course be waived or may be postponed by agreement. In the absence of such waiver or agreement, or of statutory restriction such as the *157 restrictions provided by rent control statutes, the landlord’s right to remove the tenant is preserved until his acceptance of rent.
If an agreement is in fact made for a new tenancy, the tenant is no longer a tenant holding over after the expiration of his term; his tenancy is governed by the agreement. Where no actual agreement for a landlord-tenant relation is made, there is no reason why a statute abolishing the landlord’s option to hold the tenant for a new term should provide for any tenancy implied as a matter of law by reason of the holding over and the landlord’s consent. Any implication of such a tenancy involves uncertainties concerning its terms and the application of conditions that governed the expired tenancy. It may also impose burdens directly contrary to the intention of the parties where the continued occupancy is by “ consent ” but without agreement for a new term. Both a tenancy at will or at sufferance and a tenancy from month to month impose on the landlord a requirement of notice to terminate the tenancy, and outside the City of New York a tenant as well as a landlord must give notice to terminate a tenancy from month to month. (Real Property Law, §§ 228, 232-a, 232-b.)
The acceptance of rent, however, involves conduct of both parties recognizing the relation of landlord and tenant. Where no agreement is made concerning the duration of the^ tenancy, statutory provision is desirable to exclude a construction of the transaction as creating a tenancy for the same term as the previous tenancy. Since the most frequent instances of acceptance of rent without agreement concerning the duration of the term involve continued payments of rent payable monthly under the expired tenancy, provision for a tenancy from month to month seems most likely to accord with the expectations of the parties.